| | |
|---|---|
| RAUL ARELLANO,<br><br>                     Plaintiff,<br><br>v.<br><br>BLAHNIK,<br><br>                     Defendant. | Case No.: 16-cv-2412-CAB (DHB)<br><br>**REPORT AND RECOMMENDATION DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF NO. 6]** |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

      Plaintiff Raul Arellano ("Arellano"), a state prisoner proceeding *pro se* and *informa pauperis*, filed his Complaint in this case on September 23, 2016, alleging Defendant Blahnik ("Blahnik") violated his rights under 42 U.S.C. § 1983. (ECF No. 1.) On February 16, 2017, Blahnik filed a Motion to Dismiss Plaintiff's Complaint and requested the Court take judicial notice of certain California state court records. (ECF No. 6.) Arellano filed an opposition to Blahnik's motion to dismiss on March 21, 2017. (ECF No. 8.) Blahnik then filed a reply to Arellano's opposition on March 28, 2017. (ECF No. 9.)

      After a thorough review of the pleadings, the parties' papers, and all supporting documents, the Court hereby **RECOMMENDS** that Blahnik's motion to dismiss be **DENIED IN PART** and **GRANTED IN PART**.

# I. BACKGROUND

Arellano is currently incarcerated at Richard J. Donovan State Prison ("RJD") in San Diego, California.[1] (ECF No. 1 at 1.)

The Fourth Appellate District of the California Court of Appeal, Division One, affirmed the judgment of the Superior Court of the State of California, San Diego County ("Superior Court"), on January 14, 2013. (ECF No. 6-2 at 90-113.) On April 17, 2013, the California Supreme Court denied Arellano's petition for review. (ECF No. 6-2 at 115.) Arellano asserts that, while five (5) months into state habeas corpus research, he was sent to solitary confinement and deprived of all his legal materials from September 2013 to July 2014. (ECF No. 1 at 8.) Nonetheless, Arellano filed his petition for writ of habeas corpus in the Superior Court on April 22, 2014. (ECF No. 6-2 at 118.) In his petition, Arellano lays out 98 grounds for relief, "most, but not all," of which are "clothed in IAC [Ineffective Assistance of Counsel] raiment." (*Id.* at 118-19.) The Superior Court reasoned that full or partial transcripts of the preliminary hearing and trial proceedings were *necessary* to support the "deficient performance" and/or "prejudice" elements of Arellano's IAC claims. (*Id.* at 119.) (Emphasis added.) Thus, it denied Arellano's petition on its 54 IAC grounds, as well as other grounds, on June 18, 2014. (*Id.* at 131.)

On June 7, 2016, the California Court of Appeal denied Arellano's prior petition against Daniel Paramo, Warden, which requested copies of all trial transcripts and contended that the law library staff lost all his trial transcripts that the Superior Court needs to hear his petition on the merits. (See Case No. 16-cv-2337-WQH-MDD, ECF No. 1 at 4.) The California Supreme Court also denied Arellano's petition on August 10, 2016. (*Id.*)

---

[1] On April 21, 2011, Plaintiff Arellano was sentenced to 18 years and 8 months after a jury in Superior Court of the State of California, San Diego County, found him guilty on seven (7) counts of committing a lewd act upon a child and one count of unlawful sexual intercourse with a minor more than three years younger. (ECF No. 6-2 at 22-23.)

Arellano then filed his first federal petition of habeas corpus on September 13, 2016. (*Id.* at 13.) In that petition, Arellano argued that the state court abused its discretion by not granting him copies of his trial transcripts after they deemed them necessary to analyze the "deficient performance" and "prejudice" elements of the IAC claims raised in his state court petition. (*Id.*) On September 21, 2016, the Honorable Mitchell D. Dembin, United States Magistrate Judge, issued a Notice Regarding Possible Failure to Exhaust and One-Year Statute of Limitations which cautioned Arellano to consider whether all his claims were exhausted, yet it postponed any determination of whether or not all Arellano's claims were exhausted until later in the proceedings. (See Case No. 16-cv-2337-WQH-MDD, ECF No. 2.) On the same day, the Honorable William Q. Hayes, United States District Judge, dismissed Arellano's case without prejudice because Arellano had not paid the mandatory $5.00 filing fee or demonstrated his inability to pay the fee with adequate proof. (See Case No. 16-cv-2337-WQH-MDD, ECF No. 3.)

On September 23, 2016, Arellano filed the instant Complaint against Blahnik. (ECF No. 1.) Arellano's allegations are laid out below. On February 16, 2017, Blahnik filed its Motion to Dismiss Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state an access-to-court claim upon which relief can be granted. (ECF No. 6.) After the Court set a briefing schedule, Arellano filed his response in opposition to Blahnik's motion on March 21, 2017. (ECF No. 8.) On March 28, 2017, Blahnik filed a reply to Arellano's opposition to the motion. (ECF No. 9.)

## II. PLAINTIFF'S ALLEGATIONS

The Complaint alleges that, on or around August 2014, after being released from solitary confinement, Arellano received his legal materials, including original trial transcripts from which he drafted his state habeas petition. (ECF No. 1 at 8.) It is alleged that, from August 2014 to September 2014, Arellano diligently pursued Blahnik in order to make copies of the transcripts the Superior Court deemed necessary to analyze the IAC claims in his petition on the merits. (*Id.*) Due to library access restrictions, Arellano's block only had library access once a week. (*Id.*) The Complaint also alleges that Arellano

was repeatedly skipped in line for library services in favor of other inmates by Blahnik and that Arellano saw Blahnik make copies for other inmates although Blahnik told him the copy machine was broken. (*Id.*)

The Complaint goes on alleging that Arellano told Blahnik that he needed the copies made in order to have his IAC grounds reviewed, to exhaust his state remedies and finally get his conviction overturned. (*Id.*) It is alleged that Blahnik responded by saying that he would not help Arellano with anything because he does not "like my type of charges" and that he felt pressured by Arellano's persistence. (*Id.* at 8-9.) On September 22, 2014, Arellano gave and Blahnik accepted approximately 500 pages of Arellano's legal materials, which included the original trial transcript, affidavits, and an interrogatory of the victim from a detective. (*Id.* at 9.) After a few days passed, Arellano inquired of Blahnik about what happened to the original documents he asked Blahnik to copy. (*Id.*) Blahnik told Arellano that he lost the documents when he went to make copies. (*Id.*)

Subsequently, Arellano notified Blahnik that he filed a CDCR Form 22 (the inmate-request form), and Blahnik modified his story of what happened to Arellano's documents. (*Id.*) The Complaint alleges Blahnik then expressed that he made the copies and gave them to another inmate, J.R. (*Id.*) On or about September 29, 2014, Arellano spoke with J.R., who told Arellano that he neither received any papers from Blahnik nor had a reason to pick up Arellano's papers as J.R. did not know Arellano. (*Id.*) J.R. also informed Arellano that no other inmates could pick up his legal papers as they had to be signed out by the owner. (*Id.*)

On October 22, 2014, Arellano filed a grievance against Blahnik. (*Id.*) The Complaint alleges that Arellano subsequently confronted Blahnik about losing his legal papers and why he would give his paperwork to another inmate, which risked exposing Arellano's charges and put his life at risk among other inmates. (*Id.*) Blahnik responded that Arellano should have never filed a grievance against him and confessed to intentionally throwing away Arellano's papers because he does not like Arellano or the charges for

which he was convicted. (*Id.*) For that reason, Arellano believes that Blahnik destroyed his original legal documents and his original paperwork will never be returned. (*Id.*)

## III. DISCUSSION

**A.** <u>**Legal Standards**</u>

### 1. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the sufficiency of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a [Rule 12(b)(6)] motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).[2]

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face' [Citation omitted.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

---

[2] Thus, the Court GRANTS Blahnik's Request for Judicial Notice under Federal Rule of Evidence 201(c)(2). *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see also Johnson v. Cate*, 2015 WL 2448608, at *8 (E.D. Cal. May 20, 2015); *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, 2012 WL 12919147, at *2 (S.D. Cal. Dec. 13, 2012); *Pequeno v. W.L. Montgomery*, 2015 WL 6513635, at *1 (C.D. Cal. Oct. 28, 2015).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l wildlife Fed. V. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allan*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (finding when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

//

### 2. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

"In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal constructions is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). The rule, however, "applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n. 9 (1989). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official interpretation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 3. The Authority of Magistrate Judges

"The power of federal magistrate judges is limited by 28 U.S.C. § 636." *Estate of Conners ex rel. Meredith v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993) (citing *Reynaga v. Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992)).

Under 28 U.S.C. § 636(b)(1)(A), a district court judge may designate a magistrate judge "…to hear and determine any pretrial matter pending before the court, except a motion…to dismiss for failure to state a claim upon which relief can be granted, and to

involuntarily dismiss an action." *Hunt v. Piller*, 384 F.3d 1118, 1123 (9th Cir. 2004). However, the district court may "designate a magistrate to hear a motion to dismiss and submit proposed findings of fact and recommendations for the disposition of such a motion" under 28 U.S.C. § 636(b)(1)(B). *Id.* at 1123. Within fourteen days, any party may serve and file written objections to a magistrate judge's findings in the report and recommendation. See 28 U.S.C. § 636(b)(1). Once objections are made "[a] judge of the court shall make a de novo determination of those portions of the report...to which objection is made." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### 4. Prisoner's Right to Access to the Courts

Prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). However, the right of access is not unlimited; it encompasses only "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). In order to establish a claim for denial of access to the courts, a prisoner must demonstrate that he suffered "actual injury," which, in turn, requires proof that the denial "hindered his efforts to pursue a legal claim." *Id.* at 351.

### B. Analysis

Blahnik contends Arellano's claim should be dismissed for the following reasons: (1) it is barred by the favorable termination doctrine of *Heck v. Humphrey*[3]; (2) Arellano does not sufficiently allege the non-frivolity of his underlying IAC claim; and (3) Arellano's alleged "exculpatory evidence" was available to Arellano at the time of his trial and, thus, cannot be relied on to exonerate Arellano now. (ECF No. 6-1 at 5.)

//

---

[3] 512 U.S. 477 (1994).

### 1. The Favorable Termination Doctrine under *Heck v. Humphrey*

Blahnik argues that Arellano's access-to-court claim is barred by the favorable termination doctrine of *Heck*. (ECF No. 6-1 at 5-8.)

In his opposition, Arellano contends that *Heck* does not apply here because his claim is not challenging the underlying criminal conviction or sentence. (ECF No. 8 at 3) (citing *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (*Heck*'s favorable termination requirement was found inapplicable when a § 1983 suit could not be construed as challenging the conviction or sentence)). Arellano also contends that his claim satisfies either criteria for access-to-court claims recited in *Christopher v. Harbury*, 122 S.Ct. 2179, 2186-87 (2002). (*Id.* at 3-9.)

In reply, Blahnik argues Arellano's claims are *Heck*-barred because their success would necessitate a finding that Arellano's conviction or sentence were invalid. (ECF No. 9 at 2-4.) Specifically, Blahnik contends that the application of the favorable termination doctrine does not turn on whether or not Arellano actually challenges his conviction. (*Id.* at 3.) Blahnik also contends that the non-frivolous nature of Arellano's underlying habeas claim has no bearing on *Heck*'s application here. (*Id.* at 4.)

In *Heck*, a state prisoner sought damages under § 1983 for alleged missteps in the investigation leading to his arrest, the alleged destruction of exculpatory evidence, and the use of an allegedly unlawful voice identification procedure at his criminal trial. *Heck*, 512 U.S. at 478-79. The plaintiff did not seek injunctive relief compelling his release. *Id.* Nevertheless, the Supreme Court concluded that such an action could not be pursued because a judgment in the plaintiff's favor would necessarily impugn his criminal conviction. *Id.* at 486-90. The Court established what is known as the "favorable-termination rule"[4]. *Id.* at 486-87. Plainly, a plaintiff who wishes to obtain damages under

---

[4] "We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or

9

16-cv-2412-CAB (DHB)

§ 1983 for unconstitutional state action that, if found unlawful, would invalidate the plaintiff's conviction or confinement must first obtain a favorable termination of that conviction or sentence. See generally, *id.*

Relying on the Eastern District of California's discussion of *Burd v. Sessler*[5] in *Delarm v. Growe*[6], Blahnik contends *Heck* bars an inmate's access claim for damages arising out of an inability to challenge conviction. (ECF No. 6-1 at 6-7.) In *Burd*, the plaintiff brought a § 1983 access claim for damages against prison officials who prevented him from using library resources to prepare a motion to withdraw his guilty plea, and plaintiff argued that "the loss of an opportunity to seek some particular order of relief" can form the basis of an access-to-courts claim. *Burd*, 702 F.3d at 433. The district court rejected the plaintiff's argument and granted the motion to dismiss on the ground that "a favorable determination on [the plaintiff's] damages claim would necessarily imply the invalidity of [the plaintiff's] conviction," and therefore, the plaintiff's claim was barred by *Heck*. *Id.* The Seventh Circuit pointed out " 'that only prospective relief is available in a prisoner's suit complaining of denial of access to the courts unless he has succeed in getting his conviction annulled, since otherwise an effort to obtain damages would be blocked by *Heck*.'" *Id.* (quoting *Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir. 1999)).

District courts in the Ninth Circuit have followed the reasoning of the Seventh Circuit and concluded that, pursuant to *Heck*, until their conviction or sentence has been overturned, inmates cannot bring claims for damages for denial of access to legal materials

---

called into question by a federal court's issuance of a writ of habeas corpus, 22 U.S.C. § 2254. A claim of damages bearing that relationship to a conviction that have *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 486-87 (emphasis in the original).

[5] 702 F.3d 429 (7th Cir. 2012).
[6] 2016 WL 1722382 (E.D. Cal. April 29, 2016) (dismissing plaintiff's claim for money damages under § 1983 against prison officials for denying his right to access the courts by preventing him from filing a timely federal habeas petition because his conviction had not been overturned in reliance on *Heck*).

or legal assistance to aid them in challenging some aspect of their conviction or sentence. *See, e.g., Koch v. Jester*, 2014 WL 3783961, at *5 (D. Or. July 31, 2014); *Gregory v. Cty. of San Diego*, 2013 WL 5670928, at *5 (S.D. Cal. Oct. 15, 2013); *Collins v. Corr. Corp. of Am.*, 2011 WL 768709, at *2 (D. Nev. Jan. 26, 2011); *Cole v. Sisto*, 2009 WL 2230795, at *4 (E.D. Cal. July 24, 2009)). However, that reasoning does not shed light on when a favorable determination on a plaintiff's damages claim would not "necessarily imply"[7] the invalidity of a plaintiff's conviction. See *Skinner v. Switzer* 562 U.S. 521, 533-35 (2011) (finding that plaintiff properly invoked § 1983 as success in his suit for DNA testing would not "necessarily imply" an invalid conviction because an exculpatory outcome was hardly inevitable and DNA results may prove inconclusive or further incriminate the plaintiff).

In the instant case, this Court should consider the Seventh Circuit's reasoning less persuasive than the reasoning set forth in *Lueck v. Wathen*, 262 F.Supp.2d 690, 696-99 (N.D. Tex. 2003). In *Lueck*, plaintiff brought a § 1983 access-to-court suit against prison officials alleging the defendants prevented him from collaterally attacking his conviction by confiscating his legal documents. *Id.* at 693. Plaintiff sought injunctive relief or monetary damages. *Id.* at 699. Similar to Blahnik here, the *Lueck* defendants contended that plaintiff's access claim was barred by *Heck*. *Id.* at 696. However, the *Lueck* court found that "[success on] plaintiff's access claim did not necessarily imply the invalidity of his conviction or sentence." *Id.* at 699 (internal quotation marks omitted).

Of note, the *Lueck* court questioned whether plaintiff is precluded from recovering monetary damages should injunctive relief prove inadequate and he is unable to challenge the conviction in state or federal court. *Id.* at 698. The court reasoned that the plaintiff may very well be a person without recourse under the habeas statute, who the Supreme Court determined are immune from *Heck* application. *Ibid.* (citing *Spencer v. Kemma*, 523 U.S. 1, 20-21 (1998)). In applying *Heck*, the court determined it put plaintiff in an

---

[7] See *Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'").

11

16-cv-2412-CAB (DHB)

"untenable 'Catch-22' situation." *Id.* at 698-99. Meaning, the plaintiff would be barred from bringing his access-to-court suit against defendants until he successfully overturned his conviction, but cannot *effectively* challenge that conviction because defendants have confiscated important legal materials necessary to obtain post-conviction relief. *Id.* at 699 (emphasis added). The court acknowledged that plaintiff would be deprived of a remedy for the violation of a recognized and valued constitutional right if *Heck* were strictly applied. *Ibid.* Accordingly, the *Lueck* court concluded that the defendants were not entitled to summary judgment on *Heck* grounds. *Ibid.*

Similarly, strict application of *Heck* here would lead to a misguided contortion of its critical "necessarily imply" standard and deprive Arellano of a cognizable constitutional right. As the Supreme Court reminds us, in *Skinner*, if "plaintiff's action, even if successful, will *not* demonstrate the invalidity of [his conviction or sentence], the [§ 1983] action should be allowed to proceed…" *Skinner*, 562 U.S. at 533 (quoting *Heck*, 512 U.S. at 487). Like *Skinner*, success in Arellano's suit here would not necessarily imply the invalidity of his underlying conviction. Arellano seeks compensation, equitable tolling of the statute of limitations on his future habeas petitions, and the appointment of an attorney and investigator to assist him in relocating witnesses, photos, and affidavits he previously obtained as exculpatory evidence in support of his state habeas petition. If Arellano could reacquire this exculpatory evidence, which is unlikely, there is no guarantee his IAC challenges in future habeas petitions will prevail. Plainly, Arellano's damages claim is not based on a theory that his conviction was invalid but on a theory that Blahnik violated his right of access to the courts when Blahnik prevented him from *effectively* challenging his conviction on collateral review by losing his supporting legal materials. The relief Arellano seeks would "neither terminat[e] custody, accelerat[e] the future date of release from custody, nor reduc[e] the level of custody." *Skinner*, 562 U.S. at 534 (internal citation omitted).

In addition, Arellano only has this damages claim under section 1983 to challenge his conviction at this point. In *Lueck*, it was pointed out that even the Seventh Circuit, in

*Hoard*, recognized that "there is probably an exception to the rule of *Heck* for cases in which no route other than a damages action under section 1983 is open to the person to challenge his conviction." *Id.* at 697 (quoting *Hoard*, 175 F.3d at 533). Like the *Lueck* court, the Court questions whether Arellano is precluded from recovering monetary damages should injunctive relief prove inadequate and he is unable to challenge the conviction in state or federal court. One of the exculpatory witnesses whose affidavit Arellano anticipated using to support his habeas petition is now dead; thus, even if injunctive relief is granted, Arellano cannot recover that evidence.

In Arellano's initial habeas petition, the Superior Court found that full or partial transcripts of the preliminary hearing and trial proceedings were *necessary* to support the "deficient performance" and/or "prejudice" elements of Arellano's IAC claims. Naturally, Arellano points out that it would be fruitless to continue filing habeas petitions, challenging his underlying conviction, only to be denied because he has not included the necessary supporting transcripts and other evidence. Although unsuccessful to this point, Arellano has been diligent in pursuing these transcripts via both state and federal habeas petitions. (See *Arellano v. Paramo*, Case No. 3:16-cv-02337-WQH-MDD, ECF No. 1.) Indeed, Blahnik even points out it is unsettled whether Arellano could receive the equitable relief he now seeks (criminal court transcripts) if the transcripts were lost or destroyed as he alleges. (ECF No. 9 at 3 n. 3.) As such, the Court finds Arellano's claim falls under the *Heck* exception as he can reasonably claim that no route is open to him other than this damages action to recover his supporting documents or challenge his conviction.

Like the *Lueck* court, this Court finds that Arellano is in an "untenable 'Catch-22' situation." *Lueck*, 262 F.Supp.2d at 699. Here, it seems illogical that Arellano would be precluded from suing Blahnik for violating his right of access to the courts until he successfully overturns his conviction when the Superior Court explicitly stated his habeas petition cannot be analyzed without the very documents Arellano seeks and alleges Blahnik destroyed. Accordingly, for this Court to dismiss Arellano's claim under *Heck*, at this point, would be indefensible.

A claim for damages for an unconstitutional denial of access to the courts only requires the plaintiff to prove that his case is not frivolous. *Lewis*, 518 U.S. at 353 n. 3. Meaning, a prisoner must be *actually injured* from some "concrete" and "adverse" executive action. *Id.* (emphasis in original). In total reliance on *Heck*, Blahnik simply argues that *Heck* bars Arellano's claim whether Arellano's underlying habeas petition is frivolous or not. (ECF No. 6-1 at 7-8.) In Arellano's initial habeas petition, the Superior Court found that full or partial transcripts of the preliminary hearing and trial proceedings were *necessary* to support the "deficient performance" and/or "prejudice" elements of Arellano's IAC claims. Arellano alleges that he suffered an actual injury from Blahnik's alleged destruction of his documents when the statute of limitations to file his habeas corpus petitions expired. Arellano also alleges that he suffered an actual injury from the loss of exculpatory affidavits and statements, which support his IAC claims in his habeas petition. Therefore, this Court finds that Arellano's underlying case is not frivolous.

Unlike *Heck*, Arellano's claim here does not "necessarily imply the invalidity of his conviction or sentence. *Heck*, 512 U.S. at 487. Here, Arellano seeks monetary damages for being deprived, potentially permanently, of the opportunity to present a non-frivolous claim on collateral review in an attempt to overturn his conviction. For the foregoing reasons, the Court finds that *Heck* does not bar Arellano's ability to bring a § 1983 access claim. Accordingly, the Court **RECOMMENDS** that Blahnik's motion to dismiss Arellano's Complaint on *Heck* grounds be **DENIED**.

### 2. Sufficiency of Allegations

Blahnik argues that Arellano's Complaint does not sufficiently allege the grounds which support his underlying claim for ineffective assistance of counsel. (ECF No. 6-1 at 8-9.) Specifically, Blahnik asserts that Arellano's allegations need to comport with Federal Rule of Civil Procedure 8(a). (*Id.* at 9.)

"Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). "Given the Federal

14

16-cv-2412-CAB (DHB)

Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. *Id.*

In *Harbury*, the Supreme Court lays out two types of access claims. In the first type ("the Forward-looking claim"), "the essence of the access claim is that official action is presently denying [plaintiff] an opportunity to litigate." *Harbury*, 536 U.S. at 413. "The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Ibid.* The second type ("the Backward-looking claim") covers "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id.* at 413-14. "The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case." *Id.* at 414. These types of access claims simply seek "judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.* When a prisoner asserts that he was denied access to the courts and seeks a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Id.* at 413-14.

Arellano's allegations give Blahnik fair notice of the underlying cause of action and its lost remedy. The Complaint summarizes that, around June 2014, the Superior Court denied Arellano's IAC claims based on his failure to submit trial transcripts from which "deficient performance" and "prejudice" could be analyzed. (ECF No. 1 at 8.) As stated above, Arellano's IAC claims are not frivolous; the Superior Court did not find them to be frivolous but rather in need of corroboration through trial transcripts. The Complaint also

alleges the loss of his trial transcripts, along with declarations, affidavits, and an attendance record, all which supported his IAC claims, are irreplaceable as a key witness died and Arellano does not have money to hire an investigator to recover the other lost documents. (ECF No. 1 at 11; ECF No. 8 at 8.) Arellano asserts that each of these documents exculpate him as they provide alibi evidence or evidence supporting actual innocence and/or prosecutorial misconduct, which did not come out at trial. Arellano asserts, even if he is awarded a second trial, this material evidence cannot be reproduced; therefore, the opportunity is already lost. (ECF No. 8 at 10.) Thus, the Court finds Arellano has shown loss of an arguable, underlying claim.

The Complaint goes on to allege that Arellano told Blahnik he needed copies of the transcripts specifically for the review of his IAC claims and to exhaust his state remedies. Arellano alleges that he suffered an actual injury from Blahnik's alleged destruction of his documents when the AEDPA statute of limitations to file his habeas corpus petition expired. It is also alleged that he suffered an actual injury from the loss of exculpatory affidavits and statements, which support his IAC claims in his habeas petition, which may never be reproduced due to death of a witness and potential changes in witness statement(s). Based on those allegations, Arellano alleged an official act that frustrated his habeas corpus litigation.

Arellano seeks damages as a remedy in this suit. In fact, Arellano requests $150,000 in monetary damages. (ECF No. 1 at 11-12.) Such a remedy remains unavailable with respect to habeas corpus litigation. *Harbury*, 536 U.S. at 421; *Sisk v. CSA Branch*, 974 F.2d 116, 117 (9th Cir. 1992). Moreover, punitive damages may be available to Arellano, here, under § 1983 if Blahnik's alleged conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Lewis v. Gullett*, 2010 WL 2635778, at *6 (C.D. Cal. April 5, 2010) (citing *Smith v. Wade*, 461 U.S. 30, 48-49 (1983)). Therefore, Arellano has shown a remedy that may be awarded here as recompense but that is not otherwise available in a future suit.

Here, Arellano claims he was hindered in his ability to prosecute his habeas corpus petition because Blahnik deliberately lost his legal materials. For the above reasons, the Court finds that Arellano's Complaint satisfies the essence of both the forward-looking and backward looking claims. Blahnik's alleged misconduct is a roadblock to meaningful review of Arellano's future habeas petition. In addition, Blahnik's alleged loss of Arellano's materials may have cost Arellano the opportunity to present certain exculpatory evidence along with trial transcripts to support his IAC claims permanently. Accordingly, the Court finds Arellano properly alleged grounds to support his underlying ineffective assistance of counsel claim. The Court therefore **RECOMMENDS** that Blahnik's motion to dismiss be **DENIED** on this ground.

### 3. Exculpatory Evidence

Blahnik contends that the Court should dismiss Arellano's underlying claim based on "exculpatory evidence" because Arellano was aware of such evidence at the time of his criminal trial. (ECF No. 6-1 at 9-11.) The Court finds this argument goes to the merit of Arellano's argument, rather than the sufficiency of his Complaint. Thus, the Court will not address this argument as it is better suited for a Rule 56 summary judgment motion. *Swierkiewicz*, 534 U.S. at 514. The Court therefore **RECOMMENDS** that Blahnik's motion to dismiss be **DENIED** on this ground.

### 4. Suing Official in Official Capacities

Lastly, Blahnik contends that Arellano cannot bring a claim for damages under section 1983 against Blahnik in his official capacity; thus, Arellano's claim should be dismissed. (ECF No. 6-1 at 11.) Specifically, Blahnik asserts, "[n]either a State nor its officials acting in their official capacities are persons under § 1983 when sued for damages." (*Id.*) (internal quotation marks omitted) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). However, an official can be sued directly for damages and injunctive relief under § 1983 in their individual capacity as these actions are not seen as actions against the State. *Kentucky v. Graham* 473 U.S. 159, 167 n. 14 (1985).

Here, Arellano sues Blahnik both as an individual and in his official capacity for monetary relief under § 1983. (ECF No. 1 at 2.) "*Will* makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (internal citation omitted). Accordingly, the Court finds that Blahnik, in his official capacity, is not a "person" for purposes of Arellano's § 1983 suit for damages. However, the Court finds that Blahnik fits comfortably within the statutory term "person" in his individual capacity as defendant. Therefore, Arellano can only continue his suit against Blahnik in his individual capacity, not as a state official. Therefore, the Court **RECOMMENDS** that Blahnik's motion to dismiss on this ground be **GRANTED**.

## IV. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Cathy. A. Bencivengo pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3. For the reasons outline above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order:

1. Approving and adopting this Report and Recommendation;

2. **DENYING** Blahnik's motion to dismiss based on *Heck*;

3. **DENYING** Blahnik's motion to dismiss based on the sufficiency of Arellano's allegations of the grounds for his underlying ineffective assistance of counsel claim;

4. **DENYING** Blahnik's motion to dismiss based on "exculpatory evidence;" and

5. **GRANTING** Blahnik's motion to dismiss based on Arellano's suing Blahnik in his official capacity for damages under § 1983. However, Arrellano may proceed against Blahnik in his individual capacity for damages under § 1983.

IT IS FURTHERED ORDERED that **no later than July 28, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed with the Court and served on all parties **no later than August 11, 2017**.

18

16-cv-2412-CAB (DHB)

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); see also *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: June 29, 2017

LOUISA S PORTER
United States Magistrate Judge