UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO,<br><br>        Plaintiff,<br><br>v.<br><br>BLAHNIK,<br><br>        Defendant. | Case No.:  16cv2412-CAB (MSB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS**<br>**[ECF No. 97]** |

   Raul Arellano, a state prisoner proceeding pro se and in forma pauperis, filed a complaint on September 23, 2016, pursuant to 42 U.S.C. section 1983.  (ECF No. 1.)  He alleged a single cause of action for the constitutional violation of his access to the courts against Blahnik, the law librarian at R. J. Donovan Correctional Facility ("RJD") based on events that occurred in 2014.  (Id. at 13.)  Arellano claims that Blahnik refused Arellano access to the law library and copy machine, and then intentionally lost Arellano's legal documents, which he needed to support his state habeas petition.  (Id. at 8-11.)

   Presently before the Court is "Defendant's Motion for Discovery Sanctions for Failure to Respond to Written Discovery and Failure to be Deposed," filed on January 17, 2019.  (See ECF No. 97.)  Plaintiff filed his response in opposition on February 11, 2019. (See ECF No. 99.)  Defendant replied on February 25, 2019.  (See ECF No. 100.)  Plaintiff filed a sur-reply on March 18, 2019.  (See ECF Nos. 105, 106.)  This Report and

Recommendation is submitted to the Honorable Cathy Ann Bencivengo United States District Judge pursuant to the provisions of 28 United States Code section 636.

## I.    RELEVANT PROCEDURAL AND FACTUAL HISTORY

This case has an extensive litigation history, which the Court will briefly describe, focusing on the most relevant developments.

Between the Plaintiff's filing of his Complaint on September 23, 2016, and March 13, 2018, the parties litigated Defendant's Motion to Dismiss and Plaintiff's motion for leave to file an amended complaint.[1]  (See ECF Nos. 6, 8, 9, 13, 14, 15, 16, 19, 21, 27, 29, 31, 38, 40, 41, 45, and 46.)  On October 23, 2017, over a year after Plaintiff filed his Complaint, the Court held a Case Management Conference and thereafter issued a Scheduling Order.  (ECF Nos. 24, 25.)  The Scheduling Order required Plaintiff to make initial disclosures pursuant to Rule 26(a)(1) by November 30, 2017, and set a discovery cut-off date of June 22, 2018.  (ECF No. 25 at 1-2.)  On February 21, 2018, Defendant filed an ex parte motion to take Plaintiff's deposition, which the Court granted the same day.  (See ECF Nos. 42, 43.)  On March 14, 2018, Plaintiff moved the Court to order Defendant's counsel to provide at least thirty (30) days advance notice of his deposition date to allow him to prepare.  (See ECF No. 49.)  On March 26, 2018, the Court granted Plaintiff's motion in part, and ordered Defendant to provide Plaintiff with at least fifteen (15) days' written notice of his deposition date.  (See ECF No. 53 at 2.)

Defendant first served Plaintiff with interrogatories and requests for production of records on March 30, 2018.  (ECF No. 97-2 at ¶ 2.)  At the same time, Defendant noticed Plaintiff's deposition for May 16, 2018.  (Id.)  On April 9, 2018, the Court accepted (nunc pro tunc to April 5, 2018) Plaintiff's ex parte letter dated April 3, 2018, requesting an extension of time to respond to discovery deadlines, including his

---

[1] Plaintiff filed a "motion to allow the Amendment due by 12-15-217, to be submitted on 12-17-17," which the District Court deemed a "timely motion for leave to file an amended complaint."  (See ECF No. 30.)

deadline to respond to Defendant's interrogatories, and requesting appointment of counsel.  (See ECF No. 55.)  In support, Plaintiff explained that he was in the infirmary awaiting transfer to a mental hospital after an unsuccessful suicide attempt and that he remained suicidal.  (Id. at 1.)  The Court denied Plaintiff's request to extend the discovery deadlines without prejudice, noting that he had failed to explain when the interrogatories were due, why he was unable to answer them within thirty days, whether he had requested an extension from Defendant's counsel, and whether he had been diligently litigating his case.  (See ECF No. 56 at 1-2.)  The Court denied the request for appointment of counsel, noting that Plaintiff had not demonstrated extraordinary circumstances in light of his evident ability to represent himself based on his filings to date and the lack of complexity to his case.  (Id. at 3.)

Plaintiff subsequently moved the Court for appointment of counsel and an extension of discovery deadlines on May 11, 2018, which the Court received on May 14, 2018, and accepted on discrepancy on May 23, 2018.[2]  (See ECF Nos. 57, 58.)  In his motion, Plaintiff explained his vision was impaired because he injured his head during a recent suicide attempt, and requested appointment of counsel and a 60-day extension of the discovery schedule.  (ECF No. 58 at 1.)  He supported his motion with some medical records that showed the nature of the incident, that he had a chrono for blindness/vision impairment, and that he had an upcoming follow up visit with his primary care practitioner to get a referral to ophthalmology to rule out pathology versus functional vision loss.  (Id. at 1, 5-6, 8.)

Defense counsel appeared at RJD with a court reporter on May 16, 2018 for Plaintiff's scheduled deposition, but Plaintiff refused to go forward with the deposition. (ECF No. 97-3 at 8.)  At the time of his refusal, Mr. Arellano explained that he had lost 80% of his vision on April 12, 2018, after suffering a concussion, and he was unable to

---

[2] There was no certificate of service included in the motion mailed to the Court.  (See ECF No. 58.)

16cv2412-CAB (MSB)

read.  (Id. at 6.)  He further explained that he had been in a crisis bed from March 22 to April 19, 2018, and had lacked access his legal papers since that time.  (Id.)  Defendant's counsel re-served Plaintiff with interrogatories and requests for production the same day.  (ECF No. 67-1 at ¶ 6.)

On May 24, 2018, defense counsel submitted a status report[3] to the Court regarding Plaintiff's injury, available treatment, prognosis, and available accommodations.  (See ECF No. 59.)  The status report indicated that both Plaintiff's doctor and optometrist had examined him during the month of May and found that he had blurry, very poor vision that was not corrected with lenses, and he was scheduled to see an ophthalmologist on May 22, 2018, as the cause was unknown and the treatment and prognosis uncertain.  (Id. at 3-4.)  Defense counsel included a declaration from the Associate Warden at RJD, who listed a number of accommodations available to assist vision-impaired inmates, including Plaintiff, to read and write.  (See ECF 59-2 at ¶¶ 8-12.)  Based on the information before the Court, the Court denied the appointment of counsel on May 29, 2018, but continued the discovery cut-off from June 22 to August 24, 2018, and continued other pretrial dates by sixty days.  (ECF No. 62 at 2-3.)  In doing so, the Court specifically cited the following: Plaintiff had engaged in a conversation regarding relevant legal authority with defense counsel on May 16, 2018; Plaintiff sent defense counsel a five-page, single spaced letter discussing the issues in the case to Defendant's counsel on May 18, 2018; and Plaintiff had been designated as "prisoner with disability placement impacted vision," which gave him access to special accommodations.  (Id. at 2.)  On May 30, 2018, defense counsel re-noticed Plaintiff's deposition for July 12, 2018.  (ECF No. 97-2 at ¶5; ECF No. 97-3 at 25-27.)

/ / /

---

[3] The status report was prepared in response to a court order in another case in which Raul Arellano was the plaintiff and had filed a similar motion for appointment of counsel (No. 19cv590-JLS (JLB)), but filed in this case as well as that one.  (See ECF No. 59 at 1.)

On June 22, 2018, the Court filed nunc pro tunc to June 20, 2018 Plaintiff's motion for, among other things, reconsideration of the Court's denial of appointment of counsel and for a further 45-day extension of time. (See ECF No. 65.) This motion was ostensibly written by another inmate named "Albert," who explained that he was making an exception to his policy of not assisting others with their legal cases only for purposes of the instant motion, because he believed that Plaintiff's vision impairment was an exceptional circumstance that should warrant the appointment of counsel. (Id. at 2.) In the motion, Albert argued that the accommodations described by the Associate Warden and relied upon by the Court when previously denying counsel, were either not available to, or not effective for, Plaintiff. (Id. at 4-5.) Albert also explained that Plaintiff had twice attempted suicide in April of 2018, arguing that his psychological impairment also interfered with his ability to litigate this case. (Id. at 7.)

During a phone call on July 3, 2018, Plaintiff told defense counsel that because of his vision problems, he had not responded to written discovery and would not be prepared to sit for his July 12, 2018 deposition, but he agreed to a four-month continuance of the remaining dates in the scheduling order. (See ECF No. 67-1 at ¶¶8-9.) On July 5, 2018, Defendant filed an ex parte motion to modify the scheduling order. (ECF No. 67.) In the motion, Defendant requested either that the discovery cut-off and trial-related dates be continued by four months, or that proceedings be stayed, because "[g]ood cause exists for amending the scheduling order because Defendant has not been able to obtain discovery responses from plaintiff or depose Plaintiff, and it does not appear Defendant will be able to do so under the current schedule because of plaintiff's claimed medical condition." (Id.) Defense counsel notified Plaintiff in writing on July 6, 2018 that she agreed to extend his deadline for responding to written discovery to July 27, 2018, and included a Second Amended Deposition Notice, setting Plaintiff's deposition for August 7, 2018. (See ECF No. 97-2 at ¶¶6-7; ECF No. 97-3 at 30-34.) In her letter, defense counsel told Plaintiff that if he refused to engage in discovery, she would file a motion for terminating sanctions. (ECF No. 97-3 at 30.) The Court

granted Defendant's motion on July 9, 2018, and continued discovery cut-off and trial-related dates by four months. (ECF No. 69.)

Defendant's counsel received a letter on July 12, 2018, that was written by another inmate, "Quijas," on Plaintiff's behalf. The letter states that due to Plaintiff's inability to see, and by extension read and write, Plaintiff cannot review his discovery and case law to respond to discovery or sit for a deposition. (ECF No. 97-2 at ¶8; ECF No. 97-3 at 37.) The letter explained that other letters or filings that Plaintiff has prepared did not require legal research or document review. (ECF No. 97-3 at 37.) Defense counsel responded to Plaintiff the following day, July 13, arguing that Plaintiff did not need to analyze case law to respond to discovery about the facts of his case and again informing Plaintiff that she would move for terminating sanctions if Plaintiff failed to engage in discovery. (Id. at 39.) Nevertheless, the Court having granted Defendant's application to continue deadlines by four months on July 9, 2018 (see ECF No. 69), Defendant extended Plaintiff's deadline to respond to written discovery to August 24, 2018 and re-noticed Plaintiff's deposition for September 20, 2018. (ECF No. 97-3 at 39, 41-43.)

On August 9, 2018, the United States Court of Appeal received Plaintiff's appeal of the District Judge's order partially dismissing Plaintiff's claim. (See ECF No. 80; see also ECF Nos. 16, 21.) Between August 9 and August 14, 2019, the Court received three more motions from Plaintiff, requesting appointment of counsel, extensions of time, and other miscellaneous relief. (See ECF Nos. 73-78.) In support of his repeated requests for appointment of counsel or leave to appeal the Court's denial of the same, Plaintiff (sometimes with the assistance of other inmates) discussed how his blindness prevented him from reading and writing, and explained that many of the accommodations and resources relied upon by the Court to support its denial of counsel on July 3, 2018 were either unavailable or insufficient to permit Plaintiff to represent himself, most urgently with the discovery process. (Id.) In response to these motions, Defendant stated he did not oppose extending the deadlines in the scheduling order,

16cv2412-CAB (MSB)

and Defendant would extend the deadline for written discovery responses and the date of the deposition if the Court granted such an extension.  (ECF No. 79 at 1-2.) Defendant's counsel submitted exhibits "for the Court to consider in deciding whether Plaintiff is able to litigate when provided additional time," including Plaintiff's opening brief filed August 7, 2018, and the Ninth Circuit's July 18, 2018 order denying appointment of counsel in Ninth Circuit Case No. 18-55610 (appeal from US[DC]-SD Cal. Case No. 14-cv-2401-MMA-JLB).  (ECF No. 79 at 2, 4-23, 25.)

On August 21, 2018, the Court again denied Plaintiff's motions for appointment of counsel, noting that Plaintiff's claimed inability to proceed with discovery was insufficient in light of his failure to demonstrate likelihood of success on the merits and that the complexity of his claims were causing him difficulty litigating his case, particularly in light of the Ninth Circuit's "recent denial of plaintiff's motion for appointment of counsel based on his alleged vision impairment, and . . . [D]efendant's willingness to extend the deadline to complete discovery and other deadlines as an accommodation to [P]laintiff's claimed medical condition."  (ECF No. 81 at 2-3.)  The Court continued Plaintiff's deadline to respond to written discovery to November 23, 2018, and ordered Defendant to set Plaintiff's deposition in December, with a discovery cut-off date of March 22, 2019.  (Id. at 3.)  On August 27, Defendant re-noticed Plaintiff's deposition for December 13, 2018.  (ECF No. 97.2 at ¶10, ECF No. 97-3 at 46-48.)

Plaintiff submitted another motion for reconsideration regarding appointment of counsel, for appointment of counsel on new facts, and for leave to appeal the denial of counsel, which the Court filed nunc pro tunc to September 11, 2018, the date the Court received it.  (See ECF Nos. 84, 85.)  The Court denied the motions on September 25, 2018.  (ECF No. 87.)  Plaintiff also continued to challenge the issues he had lost in this case, filing a "Motion for D.C. to Use the Proper and Controlling Case Law in Order to Allow[] Plaintiff to Proceed Under 42 U.S.C. 1983 Ple[a]ding '[W]rongful[] Incar[c]erat[ion]' as a Relief" [ECF No. 90] on October 12, 2018, and an objection to the Magistrate Judge's Order on Motion for Reconsideration [ECF No. 91] on October 16,

2018, both of which were denied.  (See ECF Nos. 92, 93.)  In denying Plaintiff's objection

to the Magistrate Judge's denial of the appointment of counsel, the District Court noted

"Plaintiff's health issues do not appear to hinder his ability to litigate, as he has recently

filed numerous motions in this case, as well as in the other six cases he currently has

pending in the United States District Court for the Southern District of California."  (ECF

No. 93 at 2 (listing cases).)

Defendant went to RJD to take Plaintiff's deposition as noticed on December 13,

2018.  (ECF No. 97-2 at ¶11.)   Though he had not provided Defendant's counsel with

notice, Plaintiff again refused to sit for his deposition.  (Id.)  Prior to going on the record,

Plaintiff represented that he would not be deposed because he had not been appointed

counsel.  (Id. at ¶12.)  Once on the record, Plaintiff explained that he remained unable

to see sufficiently to read and write because of his head injury, and therefore, he had

not been able to prepare for his deposition.  (See ECF No. 97-3 at 56-58.)  On December

20, 2018, Plaintiff submitted to the Court a document entitled "Replying to Objection of

Defendants, and Am[]ending my Request for Documents Request so I Can Cure

Discrepanc[ies] Defendant Contends on Objections," which appear to be meet and

confer correspondence to Defendant regarding Plaintiff's written discovery requests.

(See ECF Nos. 95, 96.)

While still awaiting responses to his written discovery, Defendant brought the

instant "Motion for Discovery Sanctions for Failure to Respond to Written Discovery and

Failure to be Deposed" on January 17, 2019, based on Plaintiff's failure to respond to

interrogatories and requests for production of documents and refusal to participate in

his deposition.  (ECF Nos. 97, 97-2 at ¶13.)  Arguing that lesser sanctions will be

ineffective, Defendant asks this Court to dismiss Plaintiff's case.  (ECF 97-1 at 4.)  If the

Court does not dismiss the action, Defendant requests evidence preclusion and

monetary sanctions, and that the Court order Plaintiff to respond to discovery and sit

for his deposition.  (Id. at 15-16.)  Plaintiff filed his opposition on February 11, 2019,

which included responses to written discovery.  (ECF No. 99.)  Defendant replied on

February 25, 2019.  (ECF No. 100.)  Finally, the Court accepted Plaintiff's Sur-reply on discrepancy, nunc pro tunc to March 18, 2019.  (ECF Nos. 105, 106.)

## II.    DISCUSSION

### A.    Legal Standard for Rule 37(d) Sanctions

Federal Rule of Civil Procedure 37(d) authorizes the court to issue sanctions when a party fails to appear at a properly noticed deposition or fails to serve answers to properly served interrogatories or requests for inspection of documents.  Fed. R. Civ. P. 37(d)(1)(A).  The Court may impose a broad range of sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence," "staying further proceedings" until the party has complied with discovery requirements, and "dismissing the action or proceeding in whole or in part."  Fed. R. Civ. P. 37(d)(3) (incorporating sanctions from Fed. R. Civ. Proc. 37(b)(2)(A)(i)-(vi)); see also, e.g., Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) ("Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery.") (internal citations omitted).

"Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986).  More specifically, dismissal may only be imposed where the behavior being sanctioned was "due to willfulness, fault, or bad faith."  Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1337 (1985) (internal quotation and citation omitted).  Courts may consider not only the effect of sanctions on the party being disciplined, but also the deterrent effect on future litigants and their counsel.  Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976).  Moreover, when considering whether to impose a sanction of dismissal, courts must weigh five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

cases on their merits and (5) the availability of less drastic sanctions.

Thompson v. Hous. Auth. of City of L. A., 782 F.2d 829, 831 (9th Cir. 1986); see also Sanchez v. Rodriguez, 298 F.R.D. 460, 464 (C.D. Cal. 2014).  Though a judge is to consider all of these factors, this multifactor test is not "a mechanical means of determining what discovery sanction is just."  Valley Eng'rs Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).  It simply identifies the factors for the court's consideration when determining the just outcome.  Id.

In light of the fact that Mr. Arellano is a pro se prisoner, the Court is mindful of precedent directing lenience in the interpretation of Plaintiff's pleadings.  The pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Small v. Horel, 367 F. App'x 759, 761 (9th Cir. 2010).  This is particularly true in a civil rights case, where "the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt."  Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (The rule of liberal construction is "particularly important in civil rights cases.").  While courts construe pleadings liberally in favor of pro se litigants, pro se plaintiffs nevertheless remain bound by the applicable procedural rules.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (overruled on other grounds by Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012)).  "A party's lack of counsel may be considered in evaluating the willfulness of discovery violations and the failure to obey court orders and in weighing the other factors regarding dismissal, but pro se status does not excuse intentional noncompliance with discovery rules and court orders."  Sanchez, 298 F.R.D. at 470 (collecting cases).

/ / /

/ / /

/ / /

16cv2412-CAB (MSB)

**B.    Defendant's Request for Terminating Sanctions**

    **1.    Plaintiff's failure to engage in discovery was willful**

Before imposing terminating sanctions or preclusion of evidence that is tantamount to terminating sanctions, due process requires that a Court find that a litigant's conduct was the result of "willfulness, bad faith, or fault." Hyde & Drath v. Baker, 24 F.3d 1162, 1167 (9th Cir. 1994) (citing Wyle, 709 F.2d at 589).  To find that a litigant has acted with "willfulness, bad faith, or fault," a court need only find that the failure to participate in discovery was "disobedient conduct not shown to be outside the control of the litigant." Fjelstad, 762 F.2d at 1341.  The willfulness standard simply requires that the "punished conduct [is] within the litigant's control." Id.  Conversely, if the failure to produce is the result of circumstances outside of the recalcitrant party's control or an inability to fulfill the party's litigation obligations, dismissal is not proper. United States v. Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365, 1369 (9th Cir. 1980); Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers, 357 U.S. 197, 212 (1958).

Defendant argues that "Plaintiff's extensive litigation in this case and his other cases shows that Plaintiff's refusal to provide written discovery responses and sit for a deposition is done willfully and in bad faith." (ECF No. 97-1 at 12.)  In support of this claim, Defendant details documents Plaintiff submitted between August 2018 and December 2018, including three letters to defense counsel in this case regarding his claim of factual innocence, his filings in this case (discussed in detail in Part I, supra), multiple appellate briefs in two different cases, an objection to the opposing party's expert in another case, requests for additional time and appointment of counsel, and a new complaint and motion for a temporary restraining order.  (Id. at 9-10; see also ECF No. 97-3 at 61-92, 94-95, 97-100, 102-20, 122-30, 132-33, 135, 141, 144-52, 156-61, 163-86.)  Defendant argues that such submissions demonstrate that Plaintiff could have provided written discovery responses and sat for his deposition despite his claimed vision problems, but Plaintiff chose not to do so in favor of furthering his own

16cv2412-CAB (MSB)

objectives. (ECF No. 97-1 at 11-12.) Defendant further notes that the Court expressed its concern regarding the veracity of Plaintiff's self-serving statements in another case, and argues that the identified conduct indicates Plaintiff's manipulative motivation, demonstrating that his failure to comply with discovery is in bad faith. (Id. at 12.)

In his opposition to Defendant's motion for sanctions, Plaintiff asserts that his failure to serve discovery responses or sit for his deposition was "due to symptoms out of [his] control," and not willful. (ECF No. 99 at 5-7.) He explains that the primary impediment to his participation in discovery has been his vision problem, which allowed him to read only ten out of thirty days from its inception in April 2018 to September 2018, and has improved since October 2018, such that he is able to read approximately thirteen days out of thirty. (Id. at 3.) In support, he includes some minimal medical records reflecting that he suffers from vision concerns and eye pain (which is not corrected by lenses and for which he was referred for an MRI), mental health conditions including suicidal behavior, and diabetic neuropathy. (Id. at 31, 33, 39-43.)[4]

In response to Defendant's argument that his other legal documents demonstrate that he is capable of responding to written discovery and sitting for his deposition, Plaintiff explains the documents referenced by Defendant were either prepared with the help of other inmates, or based on case law and facts that were already committed to his memory and exhibits that he prepared prior to his injury, and which were written by Plaintiff, despite the fact that he could not see his own writing sufficiently to read it. (Id. at 3-5.) He also explains that responding to Defendant's written discovery requires him to search through and read voluminous documents, which causes his vision to "shut[] down to a level of blurry vision ruining [his] whole day." (Id. at 4.) Plaintiff acknowledges that when he was able to see, he worked on his other cases, and states

---

[4] The Court notes that the numerous Healthcare Services Request Forms submitted by Plaintiff evidence Plaintiff's complaints and requests for healthcare rather than actual diagnoses or treatment. (See ECF No. 99 at 29-30, 32, and 34-38.)

the following: "I was put [in] a catch 22 where I had many cases with deadlines pending and I need it [sic] to work on the ones I felt I would be able to finish in a faster way." (Id. at 9.) He states that he has been working on the written discovery requests since his vision improved in October 2018, but "there[']s inteference [sic] with other cases deadlines and [his] other medical impairments which is not only vision but also chronic pain and seizures." (Id. at 10 (emphasis in original).) With regard to the new case he filed while his discovery responses were pending and due, Plaintiff explains his belief that the new complaint addresses a matter of survival—the discontinuation of necessary epilepsy medication. (Id. at 4.) Additionally, Plaintiff explains that he faces problems bringing the requested documents to his deposition as requested in the deposition notice because his medical conditions prevent him from carrying more than 500 pages, and he anticipates that he will need to produce "about 5,000 pages of documents" at his deposition. (Id. at 5.) Finally, in his opposition, Plaintiff included his responses to Defendant's written discovery. (See id. at 12-23.)[5]

The Court is sensitive to Plaintiff's claimed medical problems when analyzing whether his non-compliance has been due to willfulness, fault or bad faith. On the one hand, it appears from the docket that Plaintiff has been experiencing genuine problems with his vision and other health concerns that may have limited the amount of time he is able to spend reading, researching or reviewing documents for purposes of this and other litigation. (See, e.g., ECF No. 59.) However, Plaintiff's motions for appointment of counsel on the same grounds have been denied after careful consideration of the record by this Court, and other courts in other cases. (See, e.g., ECF Nos. 56, 62, 66, 81, 87, 93; see also ECF No. 97-3 at 223-25.) Nevertheless, in light of Plaintiff's claimed challenges, as described in Part I, supra, both Defendant and the Court have been generous with

---

[5] Defendant argues the insufficiency of Plaintiff's responses to the written discovery in his Reply. The Court believes those alleged insufficiencies should first be addressed through the meet and confer process, where many, if not all, of them should be resolved.

16cv2412-CAB (MSB)

extensions of time. Despite the numerous extensions of time that Defendant and the Court have permitted him, Plaintiff has failed to prioritize and complete written discovery responses for over ten months, while submitting many detailed legal documents, several of which were not subject to deadlines.

Indisputable is Plaintiff's own admission that he has chosen, in the face of overlapping deadlines in his various cases, to prioritize other legal work over his completion of discovery responses in this case. (See ECF No. 99 at 9-10.) This demonstrates that Plaintiff was in fact able to comply with his discovery obligations in this case, but chose instead to spend his time on other pleadings and litigation. See Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir. 1981) (finding plaintiff's "repeated failure to comply with the discovery request and the court's orders manifested the requisite fault," where plaintiff represented to the court that the written discovery responses were being typed, and were forthcoming, despite being burdensome); Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (rejecting plaintiff's counsel's excuse for non-compliance that plaintiff lacked funds to comply with court order).

Furthermore, Plaintiff did not make substantial efforts to comply with Defendant's limited written discovery, even to the extent he was able to do so. Cf. Porter v. Martinez, 941 F.2d 732, 734 (9th Cir. 1991) (finding deficient responses not the result of bad faith when pro se plaintiff was homeless, indigent and severely handicapped, and he "attempted to comply with massive discovery requests by the defendants by attending depositions and medical exams and responding to interrogatories"); Munoz-Santana v. U.S. I.N.S., 742 F.2d 561, 564 (9th Cir. 1984) (finding no fault for INS's non-compliance with discovery order where INS showed the substantial expense necessary to improve its filing system or undertake a search by hand, partially complied at its great expense, and identified alternate sources for the plaintiff to obtain the necessary information). Defendant served only limited discovery in this case—ten interrogatories and nine requests for production, which focused

primarily on the facts underlying Plaintiff's claim, particularly the documents Plaintiff claims Defendant lost, and Plaintiff's claimed injuries. (See ECF No. 97-3 at 15-17, 20-22.) Plaintiff has sufficient knowledge of the facts of his case, as evidenced by Plaintiff's statements that he has memorized much of the case law relevant to his claims, (see ECF No. 99 at 4), his letters to Defendant's counsel, detailing facts related to the habeas petition that is central to this case, (see ECF No. 97-3 at 61-92, 94-95, 97-100), and discovery responses he eventually provided in his opposition to the instant motion, (see ECF No. 99 at 9-23). Plaintiff has not demonstrated that he could not have sat for his deposition and provided most, if not all, of the information Defendant seeks. While it would have been insufficient, Plaintiff should have, at the very least, communicated with defense counsel in advance of deadlines about his progress, and informed her prior to the December 13, 2018 deposition date that he did not intend to participate.

Instead of making efforts to meet his discovery obligations, Plaintiff advocated extensively for what he perceived to be his own interests in his multiple pending cases. Notably, the month prior to Defendant's filing of the instant motion, Plaintiff filed a document entitled "Replying to Objection of Defendants, and amending my request for documents request so I can cure discrepancy's [sic] Defendant contends on objections," in which he responded to Defendant's objections to his written discovery requests, and requested disclosures from Defendant to prove his own case. (See ECF No. 96.) In so doing, Plaintiff dedicated his purportedly limited reading time to review Defendant's objections to written discovery and argue for the disclosures he sought, while simultaneously failing to serve his own responses to Defendant's written discovery. Similarly, Plaintiff wrote multiple letters to his opposing counsel, arguing that she was legally obligated to take action on his behalf—letters that were not compelled by any case deadline.

For these reasons, the Court finds that Plaintiff's actions were willful. Because this finding permits the Court to consider the appropriateness of terminating sanctions,

the Court does not reach a conclusion at this time regarding whether Plaintiff's delay was in bad faith.

### 2. Five-factor test

Having found that Plaintiff's failure to respond to written discovery and sit for his noticed deposition was willful, the Court now evaluates the five factors considered in this circuit when evaluating whether to impose terminating sanctions. "These factors are 'not a series of conditions precedent before the judge can do anything,' but a 'way for a district judge to think about what to do.'" In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting Valley Eng'rs, 158 F.3d at 1057). The two key factors in this analysis are typically the risk of prejudice and the availability of alternative sanctions. Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990). For the reasons described below, this Court recommends **DENYING** Defendant's motion for terminating sanctions and giving Plaintiff an additional opportunity to comply with his discovery obligations.

### a. Public's interest in expeditious resolution of litigation

The Ninth Circuit has repeatedly stated that "[t]he public's interest in expeditious resolution of litigation always favors dismissal." Yourish v. Cal. Amplifier, 191 F.3d 983, 990 (9th Cir. 2002). That factor is no different in this case, as substantial public resources have been dedicated by the Court and the Defendant in this case.

### b. Court's need to manage its docket

When a litigant's failure to comply with discovery obligations required the Court to address such non-compliance, this factor weighs in favor of dismissal. See Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002). There have been multiple requests for extensions and modification of scheduling orders in this case as a result of Plaintiff's failure to engage in discovery. Now the Court must address this request for sanctions, brought in good faith by Defendants. For these reasons, this factor weighs decidedly in favor of dismissal.

/ / /

### c. Risk of prejudice to Defendant

When assessing prejudice, courts consider whether the "plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." <u>Malone</u>, 833 F.2d at 131. Though the pendency of a lawsuit alone is insufficient prejudice to warrant dismissal (<u>Yourish</u>, 191 F.3d at 991), "[u]nnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." <u>Pagtalunan</u>, 291 F.3d at 643. A party's reason for defaulting is considered in relation to risk of prejudice to the party requesting sanctions. <u>Yourish</u>, 191 F.3d at 991. Even where no specific finding of prejudice is made, a lack of prejudice is not determinative where "counsel continues to disregard deadlines, warnings, and schedules set by the district court." <u>Henderson</u>, 779 F.2d at 1425.

Defendant argues that he has been prejudiced by Plaintiff's failure to engage in discovery because he lacks basic information regarding "which documents Plaintiff claims he lost, which he was able to replace, and the significance of each document to Plaintiff's habeas petition, or information regarding the exhaustion of administrative remedies." (ECF No. 97-1 at 13.) Defendant argues this prevents him from evaluating the merits of Plaintiff's claims and whether they have been exhausted for purposes of bringing a motion for summary judgment. (<u>Id.</u> at 13-14.) In response, Plaintiff asserts that there will be no further delay, because he provided responses to written discovery, and is ready for his deposition. (<u>See</u> ECF No. 99 at 6.)

Although failure to sit for a deposition has been found not to prejudice the opposing party where doing so did not threaten the rightful decision of the case, (<u>see</u> <u>U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.</u>, 857 F.2d 600, 604 (9th Cir. 1988) (finding that delayed deposition did not interfere with trial schedule or claims and thus did not prejudice opposing party, despite inconvenience)), many courts have found that a plaintiff's extended refusal to engage in written discovery and sit for a deposition is sufficient to demonstrate prejudice. <u>See, e.g.</u>, <u>Hyde & Drath</u>, 24 F.3d at 1166-67 (finding prejudice where party prevented opposing party from taking

depositions for roughly two years); <u>Wanderer</u>, 910 F.2d at 656 ("[t]he failures of the defendants to appear at their depositions, which were compounded by repeated noncompliance with court orders to produce documents constituted a clear interference with plaintiff's ability to prove the claims and to obtain a decision in the case.  The existence of prejudice is palpable."); <u>Wells v. Cagle</u>, Case No. 1:11-cv-01550-JLO-BAM (PC), 2018 WL 1617169, at *6 (E.D. Cal. Apr. 4, 2018) (finding prejudice where "Plaintiff's refusal to participate in his deposition substantially hinders Defendants' ability to investigate and defend against his allegations, particularly in light of the [seven year] time that has elapsed [since the filing of the case]"); <u>Bradford v. Marchak</u>, Case No.: 1:14-cv-1689-LJO-BAM (PC), 2018 WL 3046974, at *7 (E.D. Cal. June 19, 2018) ("The inability to fully defend the case or to move forward with any potential dispositive motions [caused by Plaintiff's failure to respond to written discovery and to be deposed], coupled with the delay, is prejudicial to Defendants.").

Plaintiff's refusal to respond to written discovery and be deposed has prevented Defendant from timely ascertaining the facts and evidence central to Plaintiff's claims. This complete refusal to provide information necessary for Defendant to litigate this case is sufficient to qualify as prejudice.  However, the Court notes that the deadline for Defendant to file dispositive motions has not passed, and therefore there has been no irreparable harm in terms of lost opportunity to file a motion for summary judgment. Thus, while Plaintiff's actions have prejudiced Defendant by preventing him from obtaining the evidence necessary to formulate his defense, Defendant has not made a showing of any specific, irreparable harm that cannot be cured by resetting discovery cut-off and pretrial deadlines in this case.

### d.    Public policy favoring disposition of cases on their merits

The public policy in favor of disposing of cases on their merits is strong and weighs against dismissal.  <u>Pagtalunan</u>, 291 F.3d at 643.  However, in circumstances where the behavior of the party against whom dismissal is sought has impeded disposition on the merits, this factor "lends little support."  <u>PPA</u>, 460 F.3d at 1228

18

(collecting cases); see also, e.g., Sanchez, 298 F.R.D. at 465 ("public policy favoring disposition of cases on their merits is *not* furthered by litigants . . . who refuse to provide discovery needed for preparation of a defense against his claims") (emphasis in original).

Here, Plaintiff's willful delay has prevented this case from progressing towards resolution on the merits. By failing to provide basic discovery regarding his causes of action and damages, Plaintiff has prevented Defendant from ascertaining the facts necessary to defend against Plaintiff's claims, such as information about the purportedly destroyed documents, whether the documents have been replaced, and the identification of witnesses. Because Plaintiff's willful acts have prevented the disposition of this case on the merits, the Court considers this a neutral factor.

### e. Consideration of less drastic alternatives

A district court must consider the impact of a sanction, and whether a less severe sanction could adequately address a party's failure to engage in the discovery process. Malone, 833 F.2d at 131-32. Reviewing courts will consider whether the district court (1) discussed the feasibility of less severe sanctions, (2) imposed alternative sanctions prior to ordering dismissal, or (3) warned the party that dismissal was a potential sanction prior to ordering the same. Id. at 132. Warning a party that failure to comply with a court order will result in dismissal can satisfy the consideration of alternatives requirement. Id. at 132-33. Conversely, the Ninth Circuit has reversed dismissals due, at least in part, to a district court's failure to warn the non-compliant litigant that continued non-compliance will result in dismissal. Id. at 133 (collecting cases).

Defendant argues that less drastic sanctions would not be effective, noting that the Court has already extended discovery cut-off three times, and specifically ordered Plaintiff to reply to written discovery by November 23, 2018 and to be deposed in

December 2018.[6]  (ECF No. 97-1 at 11.)  Further, Defendant argues that monetary sanctions will not be a deterrent to Plaintiff, who already has a large restitution obligation and debts for filing fees in this and other cases.  (Id.)

The Court believes that alternative sanctions have not yet been exhausted in this case.  While defense counsel previously warned Plaintiff that she would move for terminating sanctions if he did not meet extended discovery deadlines, Defendant has not asked the Court for such relief and the Court has not provided any similar warnings, or admonished Plaintiff regarding his behavior.  (See docket.)  A warning from the Court is likely to impress upon Plaintiff the significance of his duty to comply with his discovery obligations in a complete and timely fashion.  The Court believes, particularly in light of Plaintiff's pro se status, claimed vision impairment, and the fact that this is the first time the Court is directly addressing Plaintiff's willful failure to comply, that providing Plaintiff with clear guidance, setting new deadlines, and ordering him to provide complete written discovery responses and sit for his deposition, is likely to induce Plaintiff's compliance.  See Wells, 2018 WL 1617169, at *7 (discussing possible lesser sanction of "an order compelling Plaintiff's deposition attendance and resetting of dates").  Cf. Malone, 833 F.2d at 133 (noting that failure to warn, while not always required, has frequently been a contributing factor to Ninth Circuit orders reversing dismissal, and collecting cases); Sanchez, 298 F.R.D. at 465-66, 472 (approving report and recommendation finding that lesser sanctions would not be effective where plaintiff ignored court orders warning him that failure to comply with discovery orders and respond to the court's Order to Show Cause would result in sanctions (including

_____

[6] The Court's August 21, 2018 order, which Defendant cites as "order[ing] Plaintiff to reply to written discovery by November 23, 2018, and be deposed in December 2018," is somewhat different from Defendant's assertion.  It instead states "[t]he Court will extend the deadline for plaintiff to respond to defendant's written discovery to November 23, 2018.  Defendant shall reschedule plaintiff's deposition for a date in December and extend the discovery cut-off date to March 22, 2019."  (See ECF No. 81 at 3.)  The Court notes that this language addresses deadlines and does not directly order any action from Plaintiff.

16cv2412-CAB (MSB)

dismissal)).  The Court is further encouraged by Plaintiff's efforts to provide responses to written discovery in his opposition to the instant motion, and his statement that he is now prepared to sit for his deposition.  (See ECF No. 99 at 6, 12-23.)

## C.   **Defendant's Requests for Lesser Sanctions**

### 1.   **Evidence preclusion**

If the Court denies Defendant's request to dismiss this case, Defendant requests an alternative sanction precluding Plaintiff from "introducing evidence that Defendant Blahnik lost or destroyed documents that impeded Plaintiff's ability to obtain habeas relief." (ECF No. 97-1 at 15.)  Plaintiff argues in his opposition that preclusion of evidence regarding the documents Plaintiff claims Defendant destroyed would make it impossible for him to win his case, and therefore be tantamount to dismissal.  (ECF No. 99 at 7.)  Plaintiff's position is accurate—the very basis for his claim is Defendant's destruction of his legal documents.  Precluding evidence of those documents and their fate will prevent Plaintiff from meeting his burden of proof, and have the same effect as dismissal, through a slower process requiring more resources.  Because the Court concludes that it is premature to impose terminating sanctions, it **RECOMMENDS DENYING** Defendant's request to preclude evidence.

### 2.   **Monetary sanctions**

Finally, in the event that this case is not dismissed, Defendant requests monetary sanctions to compensate for the cost of Plaintiff's failure to participate in his December 13, 2018 deposition, and for the cost of drafting this motion, which totals $3,919.  (ECF No. 97-1 at 15.)  Rule 37 provides "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified and or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3).

As previously noted in this order, Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action.  Defendant himself argues, elsewhere in his motion, that Plaintiff owes over $13,000.00 in restitution and other obligations, such that

"monetary sanctions will not motivate Plaintiff." (ECF No. 97-1 at 14.) Because the circumstances indicate that Plaintiff has no ability to pay, the imposition of monetary sanctions would be unjust, and the Court **RECOMMENDS DENYING** Defendant's motion for sanctions at this stage of the litigation. See, e.g., Wells, 2018 WL 1617169, at *7 (finding the imposition of a monetary sanction would be unjust where Plaintiff lacked ability to pay); Sanchez, 298 F.R.D. at 466 ("The Magistrate is also right to conclude that because plaintiff is proceeding in forma pauperis due to documented indigency, plaintiff would be unable to pay a monetary sanction and the imposition of such a sanction would be futile . . . Therefore, the Magistrate [citation] is right to recommend denial of the defendant's request for an award of attorney fees incurred."); Bradford, 2018 WL 3046974, at *8 (finding imposition of monetary sanctions against pro se prisoner proceeding in forma pauperis unjust).

### 3. Orders to Comply

For the reasons described in Section II.B., supra, the Court **RECOMMENDS GRANTING** Defendant's request for orders compelling Plaintiff to provide complete responses to written discovery and sit for his deposition. (See ECF No. 97-1 at 16.) **Plaintiff is advised that his continued, willful failure to fulfill his discovery obligations in this case will result in the imposition of sanctions, including the dismissal of this case.**[7] Defendant points out that if the Court does not impose terminating sanctions in

---

[7] In his sur-reply, Plaintiff repeatedly blames his allegedly deficient responses to written discovery on his lack of counsel, and notes that Defendant should not have opposed his motions request for appointment of counsel. (See ECF No. 106 at 1 ("If Defendant wanted for faster proceedings it shouldn't ever oppose my motion for an attorney."), 2 ("If [Defendant] wants more professionalism it should [have] allowed met [to] get an attorney."), 3 ("If [Defendant] wanted me to perfectionate[sic]on my answers, then maybe it should think about it twice whenever a lay person requests [appointment of] counsel. Defendant shouldn't try to block me from getting one. Otherwise it should expect for Plaintiff to make such type of errors.").) In the first place, the Court notes that Defendant did not oppose the appointment of counsel, but instead provided the Court with information to inform its decision on Plaintiff's request, and informed the Court that Defendant did not oppose the requested continuance. (See ECF No. 79.) This Court cautions Plaintiff that he may not justify his failure to comply with discovery by his pro se status when this Court has already determined on multiple occasions that his situation does not represent the exceptional circumstances required for the

this case, the dates in the operative scheduling order will need to be continued.  (See ECF No. 97-1 at 16.)

### III.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court **RECOMMENDS** that:

1.    Defendant's motion for terminating sanctions be **DENIED**;

2.    Defendant's motion for the evidence preclusion sanction be **DENIED**;

3.    Defendant's motion for monetary sanctions be **DENIED**; and

4.    Defendant's motion for orders directing Plaintiff to provide complete responses to written discovery and sit for his deposition be **GRANTED**.

**IT IS ORDERED** that no later than **July 19, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 2, 2019**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  June 28, 2019

_____
Honorable Michael S. Berg
United States Magistrate Judge

---

appointment of pro bono counsel.  See Wells, 2018 WL 1617169, at *5 ("Plaintiff may not continue to delay the progress of this action by refusing to cooperate in discovery in the hopes that he will eventually be appointed counsel, after the Court has repeatedly informed him that his situation does not present the exceptional circumstances necessary for the appointment of pro bono counsel.").  Failure to meet his discovery obligations will result in the dismissal of this case.

16cv2412-CAB (MSB)