UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| RAUL ARELLANO, | Case No.: 16cv2412-CAB (MSB) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 134]** |
| v. | |
| BLAHNIK, | |
| Defendant. | |

This Report and Recommendation is submitted to the Honorable Cathy Ann Bencivengo, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On September 23, 2016, Plaintiff Raul Arellano, a prisoner incarcerated at R. J. Donovan State Prison, ("Donovan") filed a Complaint pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, alleging that Defendant Blahnik, a staff librarian at Donovan, violated his constitutional right of access to the courts by misplacing or intentionally destroying documents that Plaintiff intended to file as attachments or exhibits in state and federal habeas corpus petitions collaterally attacking his criminal conviction.  Now pending before the Court is Defendant's Motion for Summary Judgment.  For the reasons

set forth below, the Court **RECOMMENDS** that Defendant's motion for summary judgment be **DENIED**.

## I.      PROCEDURAL BACKGROUND

While the procedural history of this case is extensive, the Court will briefly summarize the developments most relevant to the instant summary judgment motion.

This § 1983 action arises out of Plaintiff's allegations that Defendant intentionally lost or destroyed the trial transcripts that were necessary for the San Diego County Superior Court's consideration of his state habeas corpus petition collaterally attacking his criminal conviction, as well as documents that he intended to submit with a subsequent federal habeas corpus petition, in violation of his right of access to the courts. (Compl., ECF No. 1 at 10; Pl.'s Opp. to Def.'s Mot. for Summ. J., ECF No. 150 at 16.)  At all times relevant to this § 1983 action, Plaintiff was incarcerated at R. J. Donovan State Prison in San Diego, California.  (See ECF No. 1 at 1.)

On March 30, 2017, Defendant filed his Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  (Def.'s Mot. to Dismiss, ECF No. 6.)  In adopting elements of Judge Porter's Report and Recommendation on Defendant's Motion to Dismiss, Judge Bencivengo concluded that although there is a potential conflict between access to courts claims under Lewis v. Casey, 518 U.S. 343 (1996), and the favorable determination doctrine of Heck v. Humphrey, 512 U.S. 477 (1994), Plaintiff's access to court suit could proceed, except with regard to damages that Plaintiff sought for wrongful incarceration, which would have inherently undermined Plaintiff's underlying criminal conviction.  (See Order on Def.'s Mot. to Dismiss, ECF No. 16 at 5-8.)

Defendant then filed the instant summary judgment motion on March 6, 2020. (Def.'s Mot. for Summ. J., ECF No. 134.)  Defendant contends that he is entitled to summary judgment for three reasons:  (1) the San Diego County Superior Court denied a previously filed habeas corpus petition regarding Defendant Blahnik's loss of Plaintiff's paperwork for failure to exhaust his administrative remedies under California Department of Corrections and Rehabilitation ("CDCR") regulations, thus precluding

1  Plaintiff from litigating the lost paperwork issue in the instant § 1983 action; (2) Plaintiff

2  failed to exhaust his administrative remedies under the federal Prison Litigation Act

3  ("PLRA") standards; and (3) Plaintiff cannot support an arguable access to courts claim.

4  (Id. at 17, 21, 23.)  Plaintiff filed his Opposition to summary judgment, (ECF No. 150), on

5  March 6, 2020, which was followed by Defendant's Reply to Plaintiff's Opposition, (Def.'s

6  Reply to Pl.'s Opp., ECF No. 151), on March 20, 2020, and Plaintiff's Sur-Reply, (Pl.'s Sur-

7  Reply to Def.'s Reply to Pl.'s Opp., ECF No. 153), on March 30, 2020.[1]

8  ## II.   SUMMARY JUDGMENT STANDARD

9  Summary judgment is appropriate when there is "no genuine dispute as to any

10  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

11  56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment avoids

12  unnecessary trials in cases in which the parties do not dispute the facts relevant to the

13  determination of the issues in the case, or in which there is insufficient evidence for a jury

14  to determine those facts in favor of the nonmovant. Crawford-El v. Britton, 523 U.S. 574,

15  600 (1998); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).  Simply put, a

16  summary judgment motion asks whether the evidence presents a sufficient factual

17  disagreement to require submission to a jury. Anderson, 477 U.S. at 251-52.

18  A fact is material when it affects the outcome of the case. Id. at 242, 248.  A dispute

19  as to a material fact is "genuine" if a reasonable jury could return a verdict for the

20  nonmoving party.  Id.  The moving party bears the initial burden of establishing the

21  absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  The moving party

22  can satisfy this burden in two ways:  (1) by presenting evidence that negates an essential

23  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party

24  failed to establish an essential element of the nonmoving party's case on which the

25

26

27  [1] Plaintiff also asked to be sent a copy of his Sur-Reply due to COVID-19 related law library closures.
    (ECF No. 153 at 1.)  The Court **GRANTS** Plaintiff's request, and **ORDERS** the Clerk to send Plaintiff a copy
28  of ECF No. 153 with this Report and Recommendation.

1    nonmoving party bears the burden of proving at trial.  Id.  at 322-23.  If the moving party

2    fails to bear the initial burden, summary judgment must be denied, and the court need

3    not consider the nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144,

4    159-60 (1970).

5         Once the moving party establishes the absence of a genuine issue of material fact,

6    the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a

7    disputed fact remains.  Celotex, 477 U.S. at 330.  "[W]here the record taken as a whole

8    could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

9    issue for trial.'"  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

10   (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

11        In making this determination, a court must draw all inferences in the light most

12   favorable to the nonmoving party and determine whether genuine issues of material fact

13   preclude entry of judgment.  Comite de Jornaleros de Redondo Beach v. City of Redondo

14   Beach, 657 F.3d 936, 942 (9th Cir. 2011).  A court determines only whether there is a

15   genuine issue for trial and, in doing so, it must liberally construe Plaintiff's filings because

16   he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  A court

17   should not engage in credibility determinations, weighing of evidence, or drawing of

18   legitimate inferences from the facts, as these functions are left for the trier of fact.

19   Anderson, 477 U.S. at 255.

20                          **III.    DISCUSSION**

21        As noted above, Defendant contends that he is entitled to summary judgment for

22   three reasons:  (1) the San Diego County Superior Court denied a previously filed habeas

23   corpus petition regarding Defendant Blahnik's loss of Plaintiff's paperwork for failure to

24   exhaust his administrative remedies under CDCR regulations, thus precluding Plaintiff

25   from litigating the lost paperwork issue in federal court; (2) Plaintiff failed to exhaust his

26   administrative remedies under the federal PLRA standards; and (3) Plaintiff cannot prove

27

28

1  an arguable access to courts claim.  (Id. at 17, 21, 23.)  The Court will address each of

2  these arguments in turn.

3  **A.    Collateral Estoppel (Issue Preclusion)**

4         Defendant, in support of his motion for summary judgment, argues that because

5  the issue of exhaustion of administrative remedies was decided against Plaintiff in a

6  previous state habeas corpus action connected to Defendant Blahnik's loss of his legal

7  papers, Plaintiff should be precluded from arguing that he exhausted his administrative

8  remedies in the instant § 1983 action.  (See ECF No. 134 at 21.)  Plaintiff, in opposition,

9  contends that although he included the issue of Defendant Blahnik losing legal paperwork

10  in that habeas petition, the portion of the state court's order regarding administrative

11  remedies addressed a different set of facts than Defendant Blahnik's loss of the

12  paperwork, thus leaving the issue of exhaustion as to Blahnik's loss of paperwork

13  unresolved.  (See ECF No. 150 at 6:15-17.)  ("As you can see the merits of habeas corpus

14  that Defendant points out in regards to [the] 602, exhaustions, is about a period of dates

15  I was in Crisis bed & [Administrative Segregation] . . . Not regarding Blahnik.")  The Court

16  will first note the collateral estoppel standards within the Ninth Circuit before turning to

17  an analysis of Plaintiff's state habeas actions.

18         **1.    collateral estoppel standard**

19         State judicial proceedings are accorded "the same full faith and credit in every court

20  within the United States . . . as they have by law . . . in the courts of [the] State . . . from

21  which they are taken."  28 U.S.C. § 1738.  Accordingly, under the Full Faith and Credit

22  Statute, federal courts must give a state court judgment the same preclusive effect as the

23  state court judgment would receive by another court of that state.  See id.; Maldonado v.

24  Harris, 370 F.3d 945, 851 (9th Cir. 2004).  There is no exception to the rules of issue and

25  claim preclusion for federal civil rights actions under 42 U.S.C. § 1983.  See Clark v.

26  Yosemite Cmty. Coll. Dist., 785 F.2d 781, 788 n.9 (9th Cir. 1986).  The Supreme Court has

27  made it clear that a § 1983 claim brought in federal court is subject to principles of issue

28  and claim preclusion—sometimes referred to collectively as res judicata—by a prior state

court judgment.  See Allen v. McCurry, 449 U.S. 90, 97-98 (1980) (issue preclusive effect in federal court is the same as that is accorded in a state's own courts); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1347 (9th Cir. 1981) ("because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent [§] 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards.")

The doctrine of res judicata limits parties' ability to relitigate matters.  Montana v. United States, 440 U.S. 147, 153 (1979).  Specifically, issue preclusion—also known as collateral estoppel under California law—forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008); see also Hiser v. Franklin, 94 F.3d 1287, 1292 (9th Cir. 1996).  The purposes of this doctrine are to protect against vexatious litigants, to conserve judicial resources, and to minimize the possibility of inconsistent decisions.  Montana, 440 U.S. at 153-54.

In California, "[c]ollateral estoppel precludes relitigation of issues argued and decided in prior proceedings."  Lucido v. Superior Court, 795 P.2d 1223 (1990).  Five threshold requirements must be present before collateral estoppel is applied:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  'The party asserting collateral estoppel bears the burden of establishing these requirements.'

In re Harmon, 250 F.3d 1240, 1245 (9th Cir. 2001) (internal citation omitted).

1

2.    **state habeas action**[2]

2

On June 12, 2015, Plaintiff filed a petition for writ of habeas corpus in the Superior

3

Court of San Diego County.  (ECF No. 134-3 at 5-20.)  In this petition, Plaintiff raised several

4

issues, arguing that his right to due process was violated because prison officials denied

5

him access to the courts in connection with his state habeas petition challenging his

6

criminal conviction.  (Id.)  First, Plaintiff alleged that Defendant Blahnik failed to return

7

trial transcripts and allegedly exculpatory evidence Plaintiff intended to submit in support

8

of his habeas petition and had entrusted to Defendant for copying.  (Id. at 8.)  Plaintiff

9

noted that he started the grievance process regarding Defendant Blahnik's loss of his legal

10

paperwork.  (Id. at 9.)  Second, Plaintiff alleged that while he was housed in the prison's

11

administrative segregation unit, corrections officers denied him appropriate access to

12

that unit's law library to compile this exculpatory evidence and research relevant case

13

law. (Id. at 11.)  Third, Plaintiff alleged that the prison's law library improperly denied him

14

access to copies or printouts of relevant case law that he intended to submit as exhibits

15

in this habeas petition.  (Id. at 11-12.)  Finally, Plaintiff alleged that the prison's law

16

librarians denied him access to a Witkin treatise necessary to formulate an evidentiary

17

18

19

20

21

22

23

24

_____

[2] Defendant asks the Court to take judicial notice, pursuant to Federal Rule of Evidence 201, of a number of documents, all court records.  (See Def.'s Req. for Jud. Notice, ECF No. 134-3.)  Plaintiff has not opposed this request.  A federal court may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992); see also Manufactured Home Cmtys., Inc. v. City of San Jose, 420 F.3d 1022, 1037 (9th Cir. 2005) (noting that a federal court may "take judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes."); Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of a California Court of Appeal opinion "and the briefs filed in that proceeding and in the trial proceeding and in the trial court" for the purposes of analyzing issue preclusion).

25

26

27

28

The Court concludes that the materials accompanying Defendant's request for judicial notice are encompassed by the rule articulated in Robinson Rancheria Citizens Council.  All the exhibits covered by Defendant's Request for Judicial Notice are court documents.  As presented, the accuracy of their contents cannot be reasonably questioned, and Plaintiff does not question their authenticity.  Accordingly, the Court **GRANTS** Defendant's request and will take judicial notice of the federal and state court documents related to Plaintiff's habeas litigation.

1 contention within this habeas petition.  (Id. at 12-13.)  Plaintiff requested that the

2 Superior Court appoint him an attorney and investigator to assist him with his efforts to

3 complete the habeas petition attacking his criminal conviction, move him to another

4 housing unit, grant him additional library access and photocopies, and grant him access

5 to the Witkin treatise.  (Id. at 8-13.)

6   The Superior Court denied Plaintiff's requests for relief, noting that Plaintiff had

7 only made conclusory allegations as to the denial of access to these materials.  (Id. at 26.)

8 Additionally, the Superior Court denied Plaintiff's requests because Plaintiff had failed to

9 exhaust his administrative remedies, citing to In re Dexter, 603 P.2d 35 (1979) and In re

10 Muszalski, 125 Cal. Rptr. 286 (1975).  (Id.)  In its analysis, the Superior Court stated that

11 Plaintiff conceded that he had not exhausted his administrative remedies with respect to

12 prison officials' actions, and additionally concluded that Plaintiff should not be excused

13 from exhausting his administrative remedies because he had failed to demonstrate good

14 faith efforts to comply with administrative filing instructions.  (Id.)

15   On June 7, 2016, the California Court of Appeal summarily denied Plaintiff's petition

16 for largely similar reasons, noting that Plaintiff had failed to exhaust his administrative

17 remedies.  (Id. at 31.)

18   **3.** **analysis**

19   A prerequisite to the Court's application of issue preclusion is that the exhaustion

20 standards applied in the state habeas are identical to those applied in the instant § 1983

21 action.  See In re Harmon, 250 F.3d at 1245; (see also ECF No. 134 at 22; ECF No. 151 at

22 5-6.)  Defendant contends, without support, that the issue of whether Plaintiff exhausted

23 his administrative remedies as to Blahnik's loss of his materials in the state habeas

24 proceeding is identical to the issue before the court in the instant motion, thereby barring

25 Plaintiff from relitigating the exhaustion issue through collateral estoppel.  Id.

26   It is well established, however, "'that when the proceeding in which issue

27 preclusion is currently sought involves different substantive law than the previous

28 proceeding, collateral estoppel does not apply.'"  See Cal. Hosp. Ass'n v. Maxwell-Jolly,

1    115 Cal. Rptr. 3d 572, 583 (2010) (quoting U.S. Golf Ass'n v. Arroyo Software Corp., 81 Cal.

2    Rptr. 2d 708, 714 (1999) (declining to bar subsequent action under collateral estoppel

3    because the prior action took place in a different legal context)); see also Pacific Tel. &

4    Tel. Co. v. City & Cty. of S.F., 17 Cal. Rptr. 687, 701-702 (1961) (refusing to bar subsequent

5    action under collateral estoppel where change in law shifted from municipal concern to

6    statewide concern).

7         Contrary to Defendant's contention, the prior determination of exhaustion by the

8    state court in the habeas proceeding was analyzed under a different legal standard than

9    the exhaustion requirement imposed by the PLRA.  District courts in the Ninth Circuit have

10    declined to apply a preclusive bar to exhaustion issues in federal civil rights actions after

11    exhaustion determinations in state habeas proceedings for precisely this reason.  See,

12    e.g., Smith v. Cobb, No. 3:15-cv-00175-GPC-WVG, 2016 WL 4523847, at *8-9 (S.D. Cal.

13    Aug. 29, 2016) (declining to apply collateral estoppel because of differences between the

14    PLRA and California exhaustion requirements when defendants argued that exhaustion

15    had been determined against plaintiff in a prior state habeas proceeding).  The PLRA, for

16    example, mandates that prisoners exhaust only the available administrative remedies,

17    rather than administrative and judicial remedies under the California exhaustion

18    standards.  See, e.g., Thorns v. Ryan, No. 07-CV-0218H (AJB), 2008 WL 544398, at *4 n.2

19    (S.D. Cal. Feb. 26, 2008) (noting that the California exhaustion requirements include

20    exhaustion of judicial remedies in some cases).  Defendant, in support of collateral

21    estoppel, only makes the conclusory contention that the exhaustion issue here is exactly

22    the same as the one analyzed in the prior state court proceeding, without any showing of

23    how the analysis in the state habeas petition would be identical to that of the instant §

24    1983 action.  (See ECF No. 134 at 22.)  This is insufficient to meet Defendant's burden of

25    demonstrating that the state law applied in deciding the issue of exhaustion in the state

26    habeas proceeding was identical to the standard applied under the federal PLRA

27    standards.

28

1    Because the standard for exhaustion is different for state habeas petitions than

2    under the PLRA, the Court **RECOMMENDS** that Defendant's motion for summary

3    judgment based on issue preclusion be **DENIED**.

4    **B.   Administrative Exhaustion**

5        In support of his motion for summary judgment, Defendant argues that Plaintiff

6    failed to exhaust his administrative remedies with regard to the lost paperwork issue

7    before bringing this action.  (ECF No. 134 at 21.)  Defendant, in support of this argument,

8    attaches various CDCR forms and other administrative documents submitted by Plaintiff

9    and processed by the various CDCR prison appeals offices over approximately a 2-year

10   period following the alleged lost paperwork incident in Plaintiff's complaint.  (ECF No. 134,

11   Exs. 1-9.)  The Court will first note the administrative exhaustion standards that inform

12   the analysis of the instant summary judgment motion and the relevant facts surrounding

13   Plaintiff's administrative filings before considering whether there is a genuine issue of

14   material fact regarding exhaustion.

15       **1.    administrative exhaustion standard**

16       The PLRA states that "[n]o action shall be brought with respect to prison conditions

17   under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail,

18   prison, or other correctional facility until such administrative remedies as are available

19   are exhausted."  42 U.S.C. § 1997e(a).  Thus, exhaustion is "mandatory" before bringing a

20   federal action.  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); see Porter v. Nussle, 534 U.S.

21   516, 524 (2002).  Failure to exhaust is an affirmative defense that must be raised and

22   proven by a defendant; a prisoner is not required to plead exhaustion in their complaint.

23   Jones v. Bock, 549 U.S. 199, 216 (2007).

24       The PLRA applies to all suits about prison life, and a prisoner is only required to

25   exhaust those remedies which are "available."  See Booth v. Churner, 532 U.S. 731, 736

26   (2001).  "To be available, a remedy must be available as a practical matter; it must be

27   capable of use; at hand."  Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing Brown

28   v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005) (internal quotations omitted)).  The Supreme

Court has held that "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006) (internal citation omitted)).  The exhaustion requirement allows the prison to resolve the issue on its own and "promotes efficiency" by allowing claims to be resolved more quickly than litigation.  Woodford, 548 U.S. at 90.

Accordingly, under the above legal framework, a court must analyze an exhaustion issue in the context of a prison's grievance procedures.  Id.  The California Department of Corrections and Rehabilitation's (CDCR) administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations: "Any inmate . . . under the [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (repealed 2020).  For appeals submitted after January 28, 2011, inmates must commence the appeals process by submitting a CDCR Form 602 grievance to the facility's appeals coordinator describing "the specific issue under appeal and the relief requested."  Id. at § 3084(a), (c).  Among other requirements, the appeal must be "limited to one issue or related set of issues" and "list all staff member(s) involved and shall describe their involvement in the issue."  Id. at § 3084(a)(1), (3).

> [Administrative remedies s]hall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 . . . and addressed through all required levels of administrative review up to and including the third level.  In addition, a cancellation or rejection decision does not exhaust administrative remedies.

Id. at § 3084.1(b).  A grievance will suffice "if it alerts the prison to the nature of the wrong for which the redress is sought."  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (superseded by statute on other grounds); see Morton v. Hall, 599 F.3d 942, 946 (9th Cir.

2010).  Additionally, "[t]he grievance 'need not include legal terminology or legal theories,' because 'the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'"  <u>Reyes v. Smith</u>, 810 F.3d 654, 659 (9th Cir. 2016) (quoting <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009)).  "The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'"  <u>Id.</u> (quoting <u>Jones</u>, 549 U.S. at 219).

A prisoner who is unsatisfied with the first level response may submit a formal appeal for a second level review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden . . . or the equivalent."  Cal. Code Regs. tit. 15, § 3084.7(d)(2) (repealed 2020).  If the prisoner is still unsatisfied with the second level of review, they may appeal to the third level of review by the chief of the Office of Appeals in Sacramento.  <u>Id.</u> at § 3084.7(c), (d)(3).  "The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and . . . exhausts administrative remedies."  <u>Id.</u> at § 3084.7(d)(3).

A defendant who seeks summary judgment based on the plaintiff's failure to exhaust administrative remedies must first prove that there was an available administrative remedy and that plaintiff did not exhaust that available remedy.  <u>Williams v. Paramo</u>, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing <u>Albino</u>, 747 F.3d at 1172) (quotation marks omitted).  If the defendant does, the burden of production then shifts to the plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  <u>Id.</u>  Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  <u>Albino</u>, 747 F.3d at 1166.

### 2.    facts pertaining to administrative exhaustion

As noted above, Plaintiff alleges that Defendant Blahnik, motivated by bias against Plaintiff's crimes of conviction, intentionally misplaced or disposed of a box of legal trial

1   transcripts, photographs, and other important documents Plaintiff needed to support a
2   state habeas corpus petition that would have resulted in his release from prison—denying
3   him access to the courts in violation of his First Amendment rights. (ECF No. 1 at 13:10-
4   12.)

5          Sometime between September 24, 2014 and October 10, 2014, Plaintiff submitted
6   a CDCR Form 22—a form by which prison inmates can request interviews with staff or ask
7   for specific services—stating that on September 24, 2014, he had turned in 422 pages of
8   legal paperwork related to his state habeas petition to the prison library for copying, and
9   that all of this paperwork had been lost. (ECF No. 134 at 36.) In this Form 22, Plaintiff
10  requested 422 pages of lined paper so that he could recreate the missing supporting
11  paperwork and requested to be moved to Donovan's B-Yard, where an inmate who had
12  helped him with the legal work was housed at the time. (Id.) Defendant Blahnik
13  responded on October 10, 2014, stating that Plaintiff's paperwork had been copied and
14  given to an inmate for delivery to Plaintiff. (Id.)

15         After receiving Defendant Blahnik's October 10, 2014 response, Plaintiff then
16  submitted a grievance dated October 22, 2014, log no. RJD-B-14-4029 ("4029
17  Grievance")—regarding paperwork that he claimed was lost by Defendant Blahnik. (Id. at
18  52.) This Form 602-A ("Original 602-A")—normally included as an attachment to a CDCR
19  Form 602—included requests for Plaintiff to be moved to Donovan's B-Yard where the
20  inmate who had helped him with legal paperwork was housed at the time, for a change
21  in status to allow for extra phone calls, and for extra library access during the week to
22  make up for lost time in preparing paperwork for his habeas petition. (Id.) Plaintiff noted
23  in this grievance that his yard did not have a Form 602, and he would rewrite the grievance
24  on the proper form if the grievance office provided him with a Form 602. (Id.)

25         On November 22, 2014, Plaintiff's Original 602-A for the 4029 Grievance was
26  rejected by Donovan's appeals coordinator, through four simultaneous Form 695
27  screening letters, for three reasons: (1) Plaintiff used a Form 602-A instead of a Form 602;
28  (2) Plaintiff needed to submit separate grievances for each of the corrective actions

1   requested; and (3) Plaintiff needed to go through the Form 22 process to resolve his issue

2   with Defendant Blahnik.  (Id. at 55-58.)

3         Plaintiff subsequently submitted a 602 Form titled "Rewrite RJD-B-14-4029"

4   ("Grievance Rewrite")—now submitted on a Form 602 rather than a Form 602-A—dated

5   December 3, 2014.  (Id. at 60-63.)  Where Plaintiff was instructed to "state briefly the

6   subject of your appeal," he wrote: "Requesting to be moved to Level 3 Yard B."  (Id. at

7   60.)  Additionally, in the space on the Form 602 where Plaintiff was required to state the

8   specific action he was requesting, he stated:  "I ask to be moved to B yard for the reasons

9   I stated above. Thank you."  (Id.)  Also on the Form 602,  Plaintiff stated that he wanted

10  to be moved to Donovan's B-Yard because three months prior, Defendant Blahnik lost all

11  of his evidence that he was going to use to have his eighteen-year conviction reversed,

12  the inmate who helped prepare his legal papers had been moved to B-Yard, he did not

13  trust the library staff in his current yard, and was at risk of losing his paperwork again.

14  (Id. at 62.)   Plaintiff also attached his October 22, 2014 Original 602-A form to this

15  Grievance Rewrite.  (Id. at 64-65.)

16        On December 23, 2014, Plaintiff requested a supervisor's review of the Form 22

17  that he submitted regarding Defendant Blahnik's alleged loss of his legal paperwork and

18  received a response on January 9, 2015, indicating that Blahnik had copied the paperwork

19  and handed it to an inmate library clerk for distribution to Plaintiff.  (Id. at 36.)  The

20  supervisor's response noted that the practice of returning paperwork to inmate clerks for

21  distribution had been discontinued and that Plaintiff would need to talk to his counselor

22  about moving to a different yard.  (Id.)  This completed the Form 22 process for Plaintiff's

23  lost paperwork issue.

24        On December 24, Plaintiff's Grievance Rewrite rejected for three reasons:  (1) the

25  grievance concerned an anticipated action, which was not appealable; (2) a request to

26  transfer to another yard needed to be made through Plaintiff's counselor rather than

27  through a grievance form (and could be challenged through the grievance process if

28

1  Plaintiff disagreed with the decision); and (3) Plaintiff had exceeded the allowable number

2  of grievances within a fourteen-day period.  (Id. at 67-68.)

3        While the documents showing most of Plaintiff's exhaustion efforts for the 4029

4  Grievance are uncontested, the parties disagree about whether Plaintiff submitted a third

5  version of his 4029 Grievance to prison officials.  Plaintiff claims to have resubmitted his

6  grievance to the appeals office after December 24, 2014. (ECF No. 150 at 3; see also ECF

7  No. 134 at 72 (in his grievance challenging the cancellation of the 4029 grievance, Plaintiff

8  stated "Appeal 4029 was last rejected on Dec 2014.  I resubmitted within 30 days of

9  rejection.").)  On the other hand, a Chief Deputy Warden and Appeals Examiner denied

10  Plaintiff's appeal of the cancellation, at the second and third level respectively, because

11  Plaintiff failed to correct and return his appeal within thirty days of the December 24,

12  2020 rejection letter.  (See ECF No. 134 at 93-96.)

13        Beginning in 2016, after the Grievance Rewrite was rejected (and after Plaintiff

14  claims to have resubmitted his 4029 Grievance a third time without receiving a response),

15  Plaintiff submitted three additional Form 602 grievances related to his 4029 Grievance

16  (ECF No. 150 at 4.)  In a January 7, 2016 grievance—log no. RJD-C-16-0476—Plaintiff

17  appears to contend that he never received a response to his third submission of the 4029

18  Grievance[3] after it was rejected in December of 2014, and requests a response from the

19  prison's appeals office.  (Id. at 42-43.)  This grievance was rejected for failing to include

20  the log number of the referenced grievance and was subsequently cancelled.  (Id. at 47,

21  41.)  The appeals office noted that there was no record of Plaintiff submitting a Form 602

22  regarding lost paperwork, and that Plaintiff failed to timely appeal the lost paperwork

23  incident within thirty days.  (Id. at 41.)  Plaintiff appealed this cancellation through the

24  second and third levels of review.  (Id. at 39-40, 35-36.)

25

26

27
   _____

28
[3] Plaintiff discusses the facts of the 4029 grievance, without including the log number.  (See ECF No. 150 at 42-43.)

Next, in a March 27, 2016 grievance—log no. RJD-C-16-1877—Plaintiff requested copies of his grievances regarding Defendant Blahnik to pursue the lost paperwork issue further.  (Id. at 55-56.)  This appeal was cancelled for presenting a duplicate issue for which the appeals office had already rendered a decision, and Plaintiff again appealed this cancellation through the second and third levels of review.  (Id. at 59, 53-54, 49-50.)

Finally, in an April 11, 2016 grievance—log no. RJD-C-16-01951—Plaintiff directly addressed Defendant Blahnik's alleged loss of a box of supporting paperwork for his habeas petition.  (Id. at 73-74.)  This grievance was cancelled for failing to meet the thirty-day filing deadline after Plaintiff's paperwork was allegedly lost between September and October 2014, and Plaintiff once again appealed this cancellation through the second and third levels of review.  (Id. at 72, 70-71, 66-67.)

On October 13, 2016 (after Plaintiff had filed the grievances noted above and nearly two years after Plaintiff claims to have submitted his 4029 Grievance a third time) the prison's appeals coordinator cancelled the 4029 Grievance because Plaintiff had failed to correct and return it within thirty days of its December 24, 2014 rejection.  (ECF No. 134 at 70.)

Plaintiff then submitted a new grievance—log no. RJD-C-16-4547—asking that the cancellation of his 4029 Grievance be vacated.  (Id. at 72.)  In this final grievance, Plaintiff claimed that the 4029 Grievance had last been rejected in December of 2014, that he had resubmitted it within thirty days of the rejection, then never heard of it until he received the October 13, 2016 cancellation.  (Id.)  Plaintiff submitted his December 3, 2014 Grievance Rewrite as an exhibit to this final grievance, which was stamped with received dates of December 8, 2014 and September 20, 2016.  (Id. at 79.)  The final grievance, log no. RJD-C-16-4547, regarding the cancellation of the 4029 Grievance was denied at the second and third levels of appeal, with the second level response indicating that the 4029 Grievance had been received by the appeals office on October 28, 2014, had last been rejected on December 24, 2014, and had not been received again until September 20, 2016.  (Id. at 93-96.)  Additionally, Donovan's Chief Deputy Warden Covel noted in the

second level response that during an interview in connection with the appeal, Plaintiff was unable to provide any evidence or documentation that he did not receive his 4029 Grievance back until October 19, 2016, as was indicated in his filings.  (Id. at 94.)

### 3.    analysis

The parties disagree as to whether administrative remedies were effectively unavailable to Plaintiff such that he should be excused from complying with CDCR's procedural requirements and whether the above facts gave adequate notice to prison officials that Plaintiff was appealing his lost paperwork issue.

Under the Albino burden-shifting framework, Defendant is first required to produce evidence that an available administrative procedure existed at Donovan to address prisoner grievances, and that Plaintiff did not completely exhaust the remedies that were available to him.  See Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted).  To demonstrate the existence of such a process, Defendant cites the relevant California Code of Regulations provisions at length, describing the Form 602 grievance process generally available to prisoners within the CDCR.  (See ECF No. 134 at 17-18.)  While Defendant submits the Declaration of Donovan Appeals Coordinator E. Frijas, stating that he searched for documents related to Plaintiff's grievance submissions under log no. RJD-B-14-4029 and authenticated the contents of certain documents on file with the prison, Frijas' declaration does not address the exhaustion procedures in place at Donovan during the period in question, whether inmates received training regarding such procedures, how grievance records are kept, or whether the documents he authenticated are the only documents relevant to Plaintiff's grievance submissions on file with the prison.  (See Frijas Decl. in Supp. Of Def.'s Mot. to Dismiss, ECF No. 134-2.)  Defendant also submits several of Plaintiff's previously filed Form 602 submissions related to Defendant's alleged misconduct, as well as other 602 Forms that Plaintiff filed and exhausted through all three levels of review.  (See id. at 52-96.)  Plaintiff's deposition testimony indicates that he was knowledgeable about the grievance processes at Donovan as set forth in Title 15 of the

California Code of Regulations.  (<u>See</u> Pl.'s Dep., ECF No. 134 at 44 (while explaining why he submitted his Form 602 before exhausting the form 22 process, Plaintiff stated: "I filed the 22 form, Blahnik responded but . . . Title 15 . . . says that even if you have a pending 22 form, if you don't submit the 602 within 30 days of the incident you are timed barred . . . Since I didn't hear no response . . . in the 30 days from the incident of September 24 was about to be up, I wasn't going to wait to get the answer from the supervisor.  So I filed the grievance.")

To meet his burden of showing that Plaintiff did not exhaust his grievance regarding the lost paperwork, Defendant notes that Mr. Frijas searched all inmate grievances on file at Donovan associated with Plaintiff's lost paperwork grievances, log no. RJD-B-14-4029, and verified that the documents attached to Defendant's motion for summary judgment were true and correct copies of the same grievance documents on file at the prison kept in the normal course of business.  (<u>See</u> ECF No. 134-2 at 1-3.)  Where the documents Mr. Frijas verified differed from the documents on file with the prison, Mr. Frijas also noted these discrepancies.  (<u>See</u> <u>id.</u> at 3 ("Exhibit 8 contains a true and correct copy of the grievance RJD-C-16-4547, dated October 25, 2016, on file at the prison as it is kept in the normal course of business, except the copy on file at the prison does not contain the second paragraph in section F on the fourth page of Exhibit 8 . . . and it does not contain the Form 22 that is the last page of Exhibit 8.").)  Notably, however, Mr. Frijas does not state that the documents he authenticated were the only documents in the file, or that Plaintiff did not resubmit the 4029 Grievance after the rejection of the Grievance Rewrite. (<u>See</u> <u>id.</u>)  In his deposition, Plaintiff claimed that he never heard from the appeals office after submitting the 4029 Grievance a third time after the December 24, 2014 rejection, and by extension, concedes that he did not exhaust this issue through the third level of review.  (<u>See</u> ECF No. 134 at 46.)

This evidence, primarily because of Plaintiff's own testimony, is enough to meet Defendant's initial burden of demonstrating that Plaintiff never submitted an accepted Form 602 regarding Defendant's involvement in the disappearance of his legal

documents, and therefore did not fully exhaust all available administrative remedies related to this issue.  See, e.g., Dubose v. Walter, No. 18-cv-01875-YGR (PR), 2019 WL 1643245, at *4 (N.D. Cal. Apr. 16, 2019) (concluding that because plaintiff had not appealed a rejected Form 602 issue defendant had met his initial burden of demonstrating that administrative remedies had not been exhausted under Albino).

Since Defendant has met his initial burden of demonstrating that the administrative remedies available to Plaintiff were not fully exhausted under Albino, the Court must next consider what evidence demonstrates that "there is something particular in [Plaintiff's] case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (internal quotation marks omitted).  Plaintiff states in his verified opposition that after receiving the rejection of the Grievance Rewrite on December 24, 2014, he resubmitted his 4029 Grievance to the appeals office and did not receive a response until a prison official delivered him a cancellation letter on October 19, 2016. (ECF No. 150 at 3; cf. ECF No. 134 at 45-46 (in which Plaintiff notes that he is unsure whether he resubmitted the Grievance Rewrite or the Grievance Rewrite was lost in a box of papers after he was transferred to the prison's administrative segregation unit).)  The October 13, 2016 screening letter cancelling the 4029 Grievance and the second level response from grievance log no. 4547 indicate that prison staff cancelled the 4029 Grievance on October 13, 2016 after Plaintiff did not resubmit that grievance filing within thirty days of its December 24, 2014 rejection.  (See ECF No. 134-2 at 2-3; ECF No. 134 at 93-94.)

On a motion for summary judgment, the Court may only draw reasonable inferences and may not "make credibility determinations or weigh conflicting evidence." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (citation omitted). Additionally, in the context of assessing exhaustion, "when the parties have offered evidence of competing versions of events, the court is not able to make credibility

1  determinations to resolve the question of exhaustion based on [the] record." <u>Ortega v.</u>

2  <u>Giamalvo</u>, No. C-07-04436 EDL, 2011 WL 2445315, at *5 (N.D. Cal. June 16, 2011)

3  (overturned on other grounds).  The Ninth Circuit has noted that with respect to the

4  exhaustion requirements of the PLRA, "[t]he absence of evidence that an appeal was

5  officially filed at the institutional level may indicate Plaintiff never filed the appeal, but it

6  may also indicate that the appeal was discarded or ignored by staff." <u>Earp v. Ornoski</u>, 431

7  F.3d 1158, 1169-70 (9th Cir. 2005); <u>see also</u> <u>Hubbard v. Houghland</u>, 471 F. App'x 625, 626-

8  627 (9th Cir. 2012) ("[T]he record in the present case did not conclusively show that [the

9  plaintiff's] statement that he filed a grievance . . . was not credible.").  Neither <u>Earp</u> nor

10  <u>Hubbard</u> considered decisions on motions for summary judgment, but both decisions

11  centered on the Ninth Circuit's inability to make credibility determinations, which informs

12  the Court's analysis of the instant summary judgment motion.

13       Here, as in <u>Hubbard</u>, the record does not conclusively show that Plaintiff's assertion

14  that he timely resubmitted the 4029 Grievance after its December 24, 2014 rejection is

15  not credible.  <u>See</u> <u>Hubbard</u>, 471 F. App'x at 626-27; (<u>see also</u> ECF No. 134-2 at 3.)  The

16  record shows that Plaintiff filed three Form 602 grievances asking for an update on the

17  status of the 4029 Grievance in 2016.  (<u>See</u> ECF No. 150 at 4, 42-43, 55-56, 73-74.)

18  Additionally, Mr. Frijas verified that the December 24, 2014 Grievance Rewrite rejection

19  notices were true and correct copies of the versions on file with the prison.  (<u>See</u> No. 134-

20  2 at 2.)  Plaintiff's handwritten note on that notice suggests that Plaintiff resubmitted the

21  rejection notices with handwritten notations sometime after December 24, 2014.  As

22  such, a genuine issue of material fact exists as to whether Plaintiff resubmitted his 4029

23  Grievance after December 24, 2014.  If it was, prison officials may have ignored or

24  otherwise obstructed the 4029 Grievance, and thereby prevented Plaintiff from

25  correcting any errors and advancing further toward exhaustion of available administrative

26  remedies.  <u>See</u> Cal Code Regs. Tit 15, § 3084.6(c)(10) (providing a thirty-day window for

27  grievances to be corrected resubmitted after their rejection).  While Defendant has

28  satisfied his initial burden of proof to show that administrative remedies were generally

available and unexhausted as to Plaintiff's claims, Plaintiff has also met his burden of production to raise genuine issues of material fact as to whether prison staff obstructed or ignored his alleged resubmission of his grievance that was needed to fully exhaust his claims under the PLRA. Accordingly, the undisputed facts, when viewed in the light most favorable to Plaintiff, do not establish as a matter of law, that Plaintiff failed to exhaust his administrative remedies.

Defendant further contends that Plaintiff should not be excused from exhausting his administrative remedies because even if Plaintiff timely resubmitted his 4029 Grievance after the December 24, 2014 rejection, his Form 602 submission was not substantively sufficient to put prison officials on notice that Plaintiff sought redress for the lost paperwork issue. (See ECF No. 134 at 21 ("[T]he allegedly re-submitted grievance could never have exhausted administrative remedies as to [Plaintiff's] lost-paperwork claim. It could only have done so for his transfer-request claim, which is not at issue in this lawsuit.").) In the first place, the Court notes that the content of the most recently submitted grievance may not be determinative in this case, as Plaintiff would have an opportunity to amend such a filing if it were rejected, or grieve a cancellation. Regardless, Plaintiff's Original 602-A and Grievance Rewrite, submitted on October 22, 2014 and December 3, 2014 respectively, each contained sufficient details about Defendant and the lost paperwork issue to put prison staff on notice of the wrong Plaintiff sought to remedy, which is now the basis of Plaintiff's denial of access to courts claim. See Sapp, 623 F.3d at 822-23.

The California Code of Regulations governing the grievance process, which became effective January 28, 2011, includes several specificity requirements. Under the current regulations, inmates are required to state "all facts known and available to him/her regarding the issue being appealed at the time of submitting the [Form 602]." Cal. Code Regs. tit. 15, §§ 3084.2(a)(3)-(4) (repealed 2020). Inmates are also required to identify by name and title or position each staff member alleged to be involved in the action or decision being appealed, along with the dates each staff member was involved in the issue

1  being appealed.  Cal. Code Regs. tit. 15, § 3084.2(a) (repealed 2020).  If an inmate does

2  not have this information, he or she must provide any other available information that

3  would assist the appeals coordinator in identifying the staff members.  Id.  The inmate

4  must also describe all staff members' involvement in the issue.  Id.

5         District courts within the Ninth Circuit agree that plaintiffs must include

6  information in a grievance or appeal that is necessary to put the prison on notice of the

7  injury or conduct complained about.  See, e.g., Rust v. Chino Prison Healthcare Providers,

8  No. EDCV-17-00556-JAK (KES), 2018 WL 3325725, at *6-7 (C.D. Cal., Apr. 9, 2018), report

9  and recommendation adopted, No. EDCV-17-00556-JAK (KES), 2018 WL 3303310 (C.D.

10  Cal. July 5, 2018) (finding sufficient exhaustion where defendants were not included by

11  name, but described as superiors and supervisors of other named staff members);

12  Cantanzarite v. Pierce, No. 1:12-CV-01502-LJQ, 2015 WL 3774285, at *9 (E.D. Cal. June 16,

13  2015), report and recommendation adopted, No. 1:12-CV-01502-LJQ, 2015 WL 3774285,

14  (E.D. Cal Aug. 11, 2015) (finding sufficient exhaustion where a hearing committee was

15  identified by the group title and date of the action without specific names); Garcia v. Cate,

16  No. EDCV 1-1610-JFW (MAN), 2015 WL 5998607, at *7 (C.D. Cal. June 4, 2015), report and

17  recommendation adopted, No. EDCV 1-1610-JFW (DFM), 2015 WL 5971550 (C.D. Cal. Oct.

18  13, 2015) (finding that a grievance that failed to name defendant was sufficient because

19  grievance on the whole was sufficient to alert prison officials to the underlying issue

20  complained about).  A grievance, however, "need not contain every fact necessary to

21  prove each element of an eventual legal claim. The primary purpose of a grievance is to

22  alert the prison to a problem and facilitate its resolution, not to lay groundwork for

23  litigation."  Griffin, 557 F.3d at 1120.

24         This notice-based framework informs the Court's analysis here.  As an initial matter,

25  Plaintiff explicitly names Defendant Blahnik as the reason for his yard transfer request in

26  his initial 602-A filing, stating: "This 602 is regarding the [library] staff R. Blahnik."  (ECF

27  No. 134 at 52.)  Plaintiff again explicitly names Defendant Blahnik in his Grievance

28  Rewrite, noting: "I want to move to B yard because 3 months ago the Library staff R.

Blahnik lost all my evidence."  (ECF No. 134 at 60-62.)  In addition to explicitly naming Defendant Blahnik, both grievances are sufficient to put prison officials on notice of Defendant Blahnik's alleged wrongdoing.  Plaintiff's allegations about Defendant Blahnik in this § 1983 action center on the alleged loss or mishandling of Plaintiff's legal documents that were to be used in his habeas petitions—issues that were clearly reflected in both his Original 602-A submission and his later submitted Grievance Rewrite.  (ECF No. 134 at 52) ("I gave [R. Blahnik] . . . my legal paperwork regarding my habeas corpus . . . so he can make copies and return it to me.  But he told me he lost all my legal . . . paperwork."); (ECF No. 134 at 60-62.) ("I want to be move to B yard because 3 months ago the Library staff R. Blahnik lost all my evidence.")  Although it is true that Plaintiff requested a yard transfer in the "Action requested" section of both the Original 602-A and the Grievance Rewrite, notifying prison officials of the lost paperwork issue did not require Plaintiff to allege precise legal theories or all facts necessary to prove an eventual claim against Defendant Blahnik.  See Bulkin v. Ochoa, No. 1:13-cv-00388 DAD DLB PC, 2016 WL 1267265, at *2 (E.D. Cal. Apr. 1, 2016) (partially denying motion for summary judgment for failure to exhaust where prison officials were shown to have been alerted to the problem, knew of the actors involved—including actors not named in the complaint, and had been given the opportunity to rectify the alleged wrong through internal means).  The undisputed facts surrounding Plaintiff's grievance submissions here go one step further than those in Bulkin; Plaintiff explicitly named Defendant Blahnik and noted the lost paper incident that precipitated his grievance filings.  (ECF No. 134 at 52 & 60.)  This description was enough to alert prison officials to the incident and the staff members involved, as required by the new California regulations.

Because the information included on the face of the Grievance Rewrite Form 602 submission satisfies the notice requirements of the exhaustion standard described above, Defendant's arguments based on the sufficiency of information included as attachments to the Grievance Rewrite are unavailing.  While it is true that information included in attachments to grievance submissions may not be fairly construed as the content of a

1  grievance itself, see, e.g., Anderson v. Gonzales, No. 1:14-cv-00362-AWI-BAM (PC), 2017

2  WL 4325773 (E.D. Cal. Sept. 29, 2017) (granting summary judgment to defendant when

3  plaintiff presented an entirely different issue in a Form 695 screening letter attached to a

4  Form 602 submission), Plaintiff's Grievance Rewrite includes the lost paperwork issue on

5  the front page of the Form 602.  Sufficient notice was therefore provided to prison

6  officials that Plaintiff intended to address the missing documents.

7          Because disputed issues of material fact exist as to whether Plaintiff submitted

8  Grievance 4029 a third time and whether it was obstructed or ignored, and the Grievance

9  Rewrite was sufficient on its face to alert prison officials to Plaintiff's attempt to seek

10  redress for the lost paperwork issue, the Court **RECOMMENDS** that Defendant's motion

11  for summary judgment based on Plaintiff's failure to exhaust administrative remedies be

12  **DENIED**.

13  **C.    Access to Courts Claim**

14          At the crux of this § 1983 action, Plaintiff alleges that Defendant has violated his

15  constitutional right of access to the courts by intentionally misplacing or destroying a

16  number of documents that Plaintiff intended to submit with his state and federal habeas

17  corpus petitions collaterally attacking his criminal conviction.  (ECF No. 1 at 13.)

18  Defendant's main contention in support of the instant summary judgment motion is that

19  even if he was responsible for the lost documents, the contents of those documents

20  would not have resulted in a successful habeas petition, thereby disproving Plaintiff's

21  contention that he was frustrated in his efforts to file a nonfrivolous claim—a prerequisite

22  requirement of an access to courts civil rights claim.  (ECF No. 134 at 9.)  In opposition,

23  Plaintiff sets forth a number of arguments, including, inter alia, (1) that the evidence lost

24  by Defendant would have been exculpatory, (2) that Defendant lost transcripts necessary

25  for the successful filing of Plaintiff's state habeas petition, which led to the subsequent

26  untimely denial of his federal habeas petition, and (3) that he has been permanently

27  barred as to some documents and continues to be barred as to others from a

28  determination on their merits in challenging his criminal conviction.  (See ECF No. 150.)

1    To properly Defendant's motion for summary judgment, the Court will first describe the

2    relevant access to courts standard before turning to the parties' conflicting arguments.

3        **1.     access to courts standard**

4        The Supreme Court has stated that "[i]t is beyond doubt that prisoners have a

5    constitutional right of access to the courts." Bounds v. Smith, 430 U.S. (1977).  The Court

6    in Bounds held that this right "requires prison authorities to assist inmates in the

7    preparation and filing of meaningful legal papers by providing prisoners with adequate

8    law libraries or adequate assistance from persons trained in the law." Id. at 828.

9        More recent cases, however, have qualified this conclusion in relevant ways.  In

10    Lewis v. Casey, the Supreme Court clarified that "inmates alleging a violation of Bounds

11    must show actual injury," a prerequisite to establish standing.  518 U.S. 343, 349 (1996).

12    Because the basic right provides for access to courts rather than any particular means of

13    access—such as library resources or free transcripts—an actual injury to the right requires

14    a showing that the prisoner was "hindered [in] his efforts to pursue a legal claim." Id. at

15    351.  In other words, the Supreme Court construed Bounds to require that states provide

16    inmates with only the "tools . . . need[ed] to attack their sentences, directly or collaterally,

17    and . . . to challenge the conditions of their confinement." Id. at 355.

18        In Christopher v. Harbury, 526 U.S. 403, 415 (2002), the Supreme Court divided

19    access to courts claims into two distinct categories.  The first—forward-looking—alleges

20    that a state actor is currently frustrating the plaintiff's attempt to prepare or file a suit.

21    Id. at 413.  Two distinct elements must be present in a forward-looking claim:  (1) an

22    arguable or nonfrivolous underlying claim, and (2) the present foreclosure of any

23    meaningful opportunity to pursue that claim. See Parrish v. Solis, No. 11-CV-01438, 2014

24    WL 1921154 , at *12 (N.D. Cal. May 13, 2014) (citing Broudy v. Mather, 460 F.3d 106, 120-

25    21 (D.C. Cir. 2006) (synthesizing the requirements of forward-looking claims in Harbury

26    and Lewis); see also Harbury, 536 U.S. at 413 (a plaintiff who alleges a forward-looking

27    claim must be "presently den[ied] an opportunity to litigate."); Lewis, 518 U.S. at 353

28    (holding that an inmate bringing a forward-looking claim must point to a "nonfrivolous

1    legal claim [that was] being frustrated [or] impeded").   Examples of forward-looking

2    access claims include a prisoner seeking access to a law library for use in preparing a court

3    filing, see Bounds, 430 U.S. at 828, or an indigent plaintiff seeking waiver of a filing fee

4    that he cannot afford to pay.  See Broudy, 460 F.3d at 117 (citing Harbury, 536 U.S. at

5    413.).

6          The second category under Harbury are backward-looking access claims, those in

7    which a state actor impeded the plaintiff from bringing past claims that cannot now be

8    brought "or tried with all material evidence[,] no matter what official action may be in the

9    future."  536 U.S. at 414.  Three elements must be present to demonstrate the existence

10   of a backward-looking claim:  (1) the loss of an arguable or nonfrivolous underlying claim;

11   (2) official action that frustrated the litigation of that claim; and (3) complete foreclosure

12   of the remedy available for the underlying claim.  See Phillips v. Hust, 477 F.3d 1070, 1076

13   (9th Cir. 2009) (citing Harbury, 536 U.S. at 413-414), vacated on other grounds, 555 U.S.

14   1150 (2009).  One relevant example of a backward-looking access claim is when a prison

15   official's refusal to make photocopies of exhibits resulted in the state court's denial of a

16   plaintiff's habeas petition. See, e.g., Sprinkle v. Robinson ("Sprinkle I"), No. CIV S-02-1563

17   LKK EFB P, 2007 WL 2389984, at *3, *7 (E.D. Cal. Aug. 20, 2007), report and

18   recommendation adopted, 2007 WL 2797835 (E.D. Cal. Sept. 26, 2007).   In both

19   categories, "the point of recognizing any access claim is to provide some effective

20   vindication for a separate and distinct right to seek judicial relief for some wrong."

21   Harbury, 536 U.S. at 414-415.  From this perspective, an access to courts claim is regarded

22   as "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury

23   by being shut out of court."  Id. at 415.

24         The Ninth Circuit has explained that where intentional interference is a factor, the

25   right of access to courts does not stop at the pleading stage of a civil rights or habeas

26   litigation.  Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011) (citing Lewis, 518 U.S. at

27   355; Bounds, 430 U.S. at 828).  In addition to the affirmative duty of prison officials to

28   assist prisoners in preparing to file litigation challenging convictions or conditions of

confinement, prisoners have the right to litigate such claims "without active interference." Id. (emphasis omitted).  In other words, once the litigation of a habeas or civil rights claim has advanced beyond the pleading stage, prisoners also have the right to serve and file necessary documents, send and receive communications to and from judges and lawyers, or to assert and sustain defenses related to such matters without barriers by state actors.  See id. at 1103 (citing Vigliotto v. Terry, 873, F.2d 1201, 1202 (9th Cir. 1989) (noting a denial of access to courts when a defendant's trial transcripts were confiscated by prison officials before an appeal)).  In Silva, the plaintiff was repeatedly transferred between different prison facilities and prison officials withheld necessary legal documents to hinder the litigation of his pending civil lawsuits.  See id. at 1104.  The Ninth Circuit concluded that these facts sufficiently alleged an actual injury under Lewis: as a result of prison officials' actions, several of the plaintiff's lawsuits were dismissed. See id.  The dismissal of a pending claim because of prison officials' actions—by itself— was sufficient to demonstrate that the plaintiff had been denied access to the courts.

It is important to note, then, that the Ninth Circuit does not assess whether a plaintiff's underlying claim would have ultimately been successful.  The deprivation of an arguable underlying claim inflicts actual injury because the opportunity to present a nonfrivolous claim itself is inherently something of value to a plaintiff.  Phillips, 477 F.3d at 1083 (citing Lewis, 518 U.S. at 353) ("An arguable (though not yet established) claim [is] something of value.").  Accordingly, to demonstrate the existence of a nonfrivolous claim, plaintiffs—at least within the Ninth Circuit—"need not show, ex post, that [they] would have been successful on the merits had [their] claims been considered."  Allen v. Sakai, 48 F.3d 1082, 1085 (9th Cir. 1994).[4]  To hold otherwise "would permit prison

---

[4] This approach differs slightly from that of other circuit courts, which have held that prisoners seeking access to courts damages must, at some level, demonstrate that their underlying claim would have been successful if it had not been frustrated by state actors.  See, e.g., Hoard v. Reddy, 175 F.3d 531, 533-534 (7th Cir. 1999) ("If a prisoner whose access to the courts is being blocked in violation of the Constitution cannot prove that, had it not been for the blockage, he would have won his case or at least settled it for more than $0 . . . he cannot get damages.").

16cv2412-CAB (MSB)

1   officials to substitute their judgment for the courts' and to interfere with a prisoner's right

2   to access on the chance that the prisoner's claim would eventually be deemed frivolous."

3   Under the actual injury requirement for backward and forward-looking access claims, a

4   plaintiff need only make some showing that the claims he sought to pursue were "non-

5   frivolous," however slim their chances at success may be.  Phillips, 477 F.3d at 1083 (citing

6   Lewis, 518 U.S. at 353).

7       **2.    factual background**

8       Plaintiff was sentenced to 18 years and 8 months in prison after a jury in San Diego

9   County Superior Court found him guilty of seven counts of committing a lewd act upon a

10  child and one count of unlawful sexual intercourse with a minor more than three years

11  younger than him.  (Def.'s Req. for Jud. Notice in Supp. of Mot. to Dismiss, ECF No. 6-2 at

12  22-23.)   The  case  against  Plaintiff  was  largely  based  on  the  victim's  incriminating

13  statement to police officers in 2009, which she later recanted, and a positive DNA test

14  from the same time period.  (See ECF No. 134-3 at 53-58.)

15      Plaintiff appealed his criminal conviction, with the California Court of Appeal

16  affirming the judgment of the San Diego County Superior Court on January 14, 2013, and

17  the California Supreme Court denying Plaintiff's petition for review.  (ECF No. 6-2 at 90-

18  113, 115.)

19      Plaintiff filed his state habeas petition with approximately 98 grounds for relief in

20  the San Diego Superior Court (Case No. EHC 976) on April 22, 2014.  (Id. at 118.)  On June

21  19, 2014, the Superior Court denied Plaintiff's habeas petition.  (Id. at 117-31.)  The judge

22  summarily denied 54 IAC claims due to Plaintiff's failure to submit copies of transcripts

23  from his preliminary hearing and trial.  (Id. at 119.) ("Though he cites them throughout

24  his multiple -page explanations, petitioner has not submitted full or partial transcripts of

25  the preliminary hearing and trial proceedings.  Because these transcripts are necessary to

26  support the 'deficient performance' and/or 'prejudice' elements of the IAC claims . . . the

27  petition is denied as to these 54 grounds.").)  Twenty grounds were denied for having

28  been  raised  and  rejected  on  appeal.   (Id. at 120.)   The  court  found  three  grounds

unintelligible.  (Id. at 130.)  The remaining grounds were denied on the merits, with the lack of transcripts also being cited as a factor in the court's denial of claims based on Brady v. Maryland, 373 U.S. 83 (1965), (id. at 126), and Batson v. Kentucky, 476 U.S. 79 (1986), (id. at 128-29).

Plaintiff claims to have hired a detective who obtained numerous other exhibits to support Plaintiff's habeas claims, which Plaintiff intended to submit with new claims and to seek review on the merits of the claims the state court did not reach due to lack of transcripts.  (ECF No. 1 at 11, see infra (detailing these additional documents).)  In July of 2014, Plaintiff was released from solitary confinement, where he had been since September of 2013.  (ECF No. 1 at 8.)  Sometime the following month, Plaintiff received his legal property back after his transfer from solitary.  (Id.)  As discussed in previous sections, Plaintiff alleges he then unsuccessfully asked Defendant for copies of his trial transcripts and other supporting documents through the law library from August until September 22, 2014.[5]  (Id.)  During this time, Plaintiff alleges Defendant intentionally skipped over Plaintiff in line for the law library and refused him copies.  (Id.)  On September 22 or 24, 2014, Defendant took Plaintiff's legal documents to make copies.  (Id. at 9; see also ECF No. 134 at 36.)  Plaintiff now asserts for a variety of reasons that Defendant intentionally lost or destroyed Plaintiff's legal materials because he did not like Plaintiff and the nature of his charges, while Defendant has stated that he gave the copies to his lead clerk (another inmate) to return to Plaintiff.  (Compare ECF No. 1 at 8 with ECF No. 134 at 36.)

---

[5] In the Motion for Summary Judgment now before the Court, Defendant does not claim that there is no genuine issue of material fact regarding Plaintiff's allegations regarding Blahnik's actions.  (See ECF No. 134.)  Therefore, the Court takes this part of the factual basis in the light most favorable to the non-moving party as stated in his Complaint and where indicated in the exhibits submitted to the Court.

16cv2412-CAB (MSB)

On June 12, 2015, Plaintiff filed a state habeas petition in San Diego Superior Court (Case No. HSC 11460[6]).  (ECF No. 134-3 at 5.)  This petition, also described in the issue preclusion section of this report, <u>supra</u>, raised four different grounds of denial of access to the courts based on (1) Defendant's loss of Plaintiff's legal documents (as relevant to this case), (2) the prison providing inadequate access to the law library, (3) the law library staff refusing to provide printouts of cases Plaintiff claimed to need to submit as exhibits to his habeas attacking his criminal conviction, and (4) the law library staff refusing to provide him with copies of a certain section of a Witkin treatise.  (<u>Id.</u> at 8-13.)  The Superior Court denied this habeas petition, citing Plaintiff's failure to exhaust his administrative remedies.  (<u>Id.</u> at 25-27.)  The California Court of Appeal denied a similar habeas petition on June 7, 2016, stating that Plaintiff had not exhausted his administrative remedies, and in any event, Plaintiff was only entitled to a copy of the transcript at the collateral relief stage if he demonstrated a particularized need, which he had not.  (<u>Id.</u> at 31-32 (citing <u>People v. Bizieff</u>, 226 Cal.App.3d 1689, 1701-02 (1991) and <u>People v. Markley</u>, 138 Cal.App.4th 230, 240 (2006)).)  The California Supreme Court denied a similar petition without comment on August 10, 2016.  (Case No. 16cv2337-WQH-MDD, Order Den. Pl.'s Pet. for Review, ECF No. 10-34.)

Plaintiff also attempted via letters and motions filed with the Superior Court in 2015 and 2016 to obtain some of the lost documents, including copies of his trial transcripts and the victim's school attendance records.  (Case No. 16cv2337-WQH-MDD, ECF No. 15 at 7 (report and recommendation describing motions and correspondence).)

Plaintiff filed a federal habeas petition (Case No. 16cv2337-WGH-MDD) on September 13, 2016, in large part seeking to obtain copies of trial transcripts and other

---

[6] It appears this was Plaintiff's second habeas petition under this case number.  The first petition dealt with a claimed due process violation related to a hearing on a prison rules violation report, not relevant here.  (<u>See</u> ECF No. 134-3 at 5 (Petition with notation of "2nd Petition"), 25 (order denying petition, noting "[t]he Second Petition raises grounds unrelated to the First Petition); <u>see also</u> Case No. 16cv2337-WQH-MDD, R. & R. in re Pet. for Writ of Habeas Corpus, ECF No. 15 at 6-7 (describing first petition).)

documents that he claimed Defendant had lost.  (Case No. 16cv2337-WQH-MDD, Pet. for Writ of Habeas Corpus, ECF No. 1.)  The Court denied Plaintiff's habeas petition, finding that because Plaintiff's claims did not challenge the fact or the duration of Plaintiff's confinement, they were not cognizable on federal habeas review.  (Case No. 16cv2337-WQH-MDD, ECF No. 15; report and recommendation adopted, Order Adopting R. & R., ECF No. 43.)

Plaintiff filed another federal habeas petition, this time challenging his underlying conviction, on February 15, 2017.  (Case No. 17cv354-WQH-MDD, Pet. for Writ of Habeas Corpus, ECF No. 1.)   Plaintiff's First Amended Petition in that case raised 84 claims attacking his conviction, sentence, and restitution.  (Case No. 17cv354-WQH-MDD, Order Discussing First Am. Pet., ECF No. 65; First Am. Pet., ECF No. 32.) On July 20, 2018, District Judge Hayes dismissed the petition as untimely.  (Case No. 17cv354-WQH-MDD, ECF No. 65.) Judge Hayes considered the role of Defendant's alleged loss of Plaintiff's transcripts and exhibits in his equitable tolling discussion, and found that tolling on that basis was only warranted from September 24, 2014 to June 14, 2015.[7]  (Id. at 9.)

### 3.    documents-at-issue

Throughout discovery and briefing on this motion, Plaintiff has identified several specific documents that he alleges Blahnik lost or destroyed after taking possession of

--------

[7] In determining the end date of June 14, 2015, Judge Hayes cited to two statements made by Plaintiff in CDCR forms.  (Id. at 8.)  First, in a CDCR 602 grievance form dated July 9, 2015, Plaintiff stated "[o]n 6-11-2015 I came out of Adseg.  On 6-14-2015 I received my legal material, although half of my habeas is missing, I still received it.  For such reason I am not asking no more for my legal material."  (Id. (quoting Case No. 17cv354-WQH-MDD, Pet'r's Opp. To Resp't's Mot. to Dismiss, ECF No. 47 at 186).)  In a CDCR 22 Inmate/Parolee Request for Interview, Item, or Service dated July 14, 2015, Plaintiff stated "I received my property on 6-14-2015, 2 weeks after I realize[d] one box of legal paperwork is missing.  In there w[ere] trial transcripts volume 1, 2.  Can you search [i]n storage to see if it's there?"  (Id. (quoting Case No. 17cv354-WQH-MDD, ECF No. 47 at 236.)  On June 8, 2020, Plaintiff filed a motion for review of Judge Hayes' denial, inter alia arguing that he should be entitled to equitable tolling for the periods when he had pending habeas petitions seeking copies of his trial transcripts to pursue his IAC claims, which is now pending.  (Case No. 17cv354-WQH-MDD, Pet'r's Mot. for Recons., ECF No. 171 at 2-4.)

16cv2412-CAB (MSB)

them in September of 2014.  The Court will summarize the record as to each item of lost evidence below.

(1)     Trial transcripts that Plaintiff intended to submit to support his IAC claims in state habeas.  (ECF No. 134 at 100, 122.)  Plaintiff claims he did not recover these transcripts until around October 2017, when the federal court provided them to him in case number 17cv354.  (Id.)

(2)     The victim's school attendance records from 2007, which Plaintiff claims would show that the victim was in school until 2:30 p.m., not 2:00 p.m., contradicting the victim's out-of-court statement to police.  (ECF No. 134 at 99.)  This record purportedly also showed that the victim lived at a San Diego address during the relevant time in 2007, not in El Cajon where the crimes were alleged to have occurred.  (Id. at 119.)  Plaintiff claims he had this record at the time of trial, then officers lost it while he was constructing his state habeas and his sister obtained it again through an investigator in June 2014.  (Id. at 119.)  Plaintiff says this evidence was "the key to [proving his] innocence," because it contradicts the only evidence against him.  (Id.)

(3)     Declaration from "Carlos," asserting Carlos was with the victim on the afternoon of April 5, 2008, when the victim had told police she had been having sex with Plaintiff.  (Id. at 100.)

(4)     Child Protective Services records showing that the victim lived in a foster home from January to November 2007, which would have verified the victim's trial testimony and arguably contradicted her incriminating statement to officers.  (Id. at 100, 120; see also ECF No. 150 at 11.)  Plaintiff claims that he received these records around June 2014, and they would have supported his innocence.  (ECF No. 134 at 120.)

(5)     Juan Munoz' declaration, prepared by a privately retained investigator around June 2014, which stated that Mr. Munoz had secretly recorded the victim, who "spontaneously [confessed] how everything she told police was false" and that when he took her to 1162 N. Cuyamaca Street (the only place Plaintiff claims to have stayed in El Cajon), the victim had denied any knowledge of this location.  (ECF No. 134 at 100, 118 &

n.1.)  Mr. Munoz purportedly further stated that he lived at 1162 N. Cuyamaca Street in 2007, and never saw the victim at that location, and that he also worked with Plaintiff at that time and never saw Plaintiff and the victim together.  (Id. at 110.)  Juan Munoz has died since making his declaration.  (Id. at 101.)

(6)    Marcos Mendez' declaration, made after Plaintiff submitted his state habeas petition, in the format of notarized responses to a questionnaire prepared by an investigator.  (Id. at 121.)  According to Plaintiff, Mr. Mendez stated in this declaration that he was the victim's boyfriend, he lived at 1162 N. Cuyamaca Street and never brought the victim there, he worked with Plaintiff on the days and nights in question, the victim was not permitted to go anywhere while she was in the foster home and when she went to live with her mom in the year in question[8], that the victim confessed to Mr. Mendez that she made up the 2007 allegations against Plaintiff to get revenge on her sister, and that she had told Marcos she "mess[ed] around" with Plaintiff in Mexico.  (Id. at 121-122.)

(7)    Julian Mendez' ("Julian's") declaration that he was with Plaintiff on April 5, 2008, including at the time that the victim's sister saw him near her home, and Plaintiff could not have been with the victim that afternoon.  (Id. at 120.) Julian's declaration also stated that he knew the victim was capable of making false accusations because the victim had once threatened to report sex between the victim and Julian if he did not provide her drugs.  (Id. at 121.)

(8)    The apartment contract for 1162 N. Cuyamaca Street, showing that Plaintiff was not on the contract in 2007.  (ECF No. 150 at 12.)  Plaintiff claims that someone sent him this evidence in June 2014, and he has been unable to recover it since Blahnik lost it.  (Id. at 12-13.)

(9)    Brissa Contreras' declaration, which stated that Ms. Contreras walked home from school with the victim and stayed there until "the mother" came home.   (ECF No.

---

[8] Based on the dates of Plaintiff's conviction offenses, the Court assumes that Plaintiff means 2007.

134 at 123.)  Ms. Contreras stated that from September through December of 2007, she spent the night at the victim's home.  (Id. at 123; ECF No. 150 at 14.)  Plaintiff claims the declarant stated she never saw the victim go to any location in El Cajon or with Plaintiff.  (Id.)  Finally, Ms. Contreras is alleged to have stated that she and the victim had been together on the afternoon of April 5, 2008, using mushrooms with Carlos, and that about 15 minutes after the victim got out of the car with them, they drove by the victim's house and saw the Plaintiff arriving there.  (ECF No. 134 at 124.)

(10)    Declarations of Tony and Jacobo, two people who lived at 1162 N. Cuyamaca Street, that stated that they were home all day, and that while Plaintiff was frequently at that address, the victim never was.  (ECF No. 134 at 125.)  They further stated that Plaintiff didn't live or pay rent at their home or own any keys, and he was not allowed to be at the home by himself, and that Plaintiff lived between his mother's house and a place in Tijuana.  (ECF No. 150 at 12.)

(11)    Photographs of the location in El Cajon where prosecutors assumed the alleged crimes occurred, and statements (a) from the victim's sister that Plaintiff used to stay at this address in El Cajon, and (b) from the victim that she had never seen the location before.  (ECF No. 1 at 10-11.)  These photographs and statements were obtained by a detective Plaintiff retained.  (Id.; ECF No. 134 at 110.)

### 4.    analysis

Regarding the merits of Plaintiff's access to court claim, Defendant alleges that Plaintiff cannot prevail because he does not have an arguable underlying legal claim, and therefore suffered no actual injury. [9]  (ECF No. 134 at 23; ECF No. 151 at 6.)  To support

---

[9] The Court notes that Defendant has not contested causation in his Motion for Summary Judgment, therefore many issues, including whether Plaintiff's contemplated state habeas submissions would have been accepted as procedurally proper has not been raised or briefed before this Court.  However, the Court notes there is no hard deadline for the submission a habeas petition in the state of California—instead habeas petitions must be filed "reasonably promptly."  In re Saunders, 21 Cal.4th 697, 703 (199).  Furthermore, when the superior court denies a petition, seeking appellate review with

this position, Defendant first argues that any actual innocence claim based on the allegedly lost evidence would be fruitless because the evidence was not new and does not establish innocence.  (ECF No. 134 at 26-32; ECF No. 151 at 6-8.)  Defendant reviews each piece of allegedly lost evidence to explain how Plaintiff admittedly either possessed or knew about the relevant evidence at the time of trial, and often submitted substantially similar evidence in support of his state habeas.  (ECF No 134 at 27-32.)  Second, Defendant argues that Plaintiff's IAC claims "would be fruitless" because he cannot show prejudice considering the existing evidence against him.  (ECF No. 134 at 32-33; ECF No. 151 at 8-9.)

In addition to addressing the merits of his claims, Plaintiff argues that Judge Porter's June 29, 2017 Report and Recommendation Denying in Part and Granting in Part Defendant's Motion to Dismiss, describing why Plaintiff's state habeas claims were not frivolous, should apply here.  (ECF No. 150 at 25.)  In his Sur-Reply, Plaintiff also identifies additional underlying claims that Blahnik prevented Plaintiff from advancing, explaining that Blahnik's destruction of documents delayed Plaintiff's filing of his federal habeas, and as a result even the habeas claims that the state court denied on the merits were denied as untimely in federal court.  (ECF No.153 at 8-9, 14.)

"Inmates have an established right to present their legal claims to the courts and to have them considered <u>by the courts</u>."  <u>Allen</u>, 48 F.3d at 1091 (emphasis in original). "The very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong."  <u>Harbury</u>, 536 U.S. at 414-15.  To show standing through "actual injury," an inmate alleging an access to court violation must demonstrate that the state action "hindered his efforts to pursue a [nonfrivolous] legal claim," either attacking his criminal conviction or challenging his conditions of confinement.  <u>Lewis</u>, 518 U.S. at 351, 355.  Backward-looking access claims,

---

a new petition in the court of appeal is not considered a successive petition (which is generally not allowed).  <u>See</u> Cal. Penal Code § 1475; <u>In re Clark</u>, 5 Cal.4th 750, 767 n.7 (1993).

1   because they allege the opportunity to present the underlying claim has been lost, must

2   specifically describe the underlying claim to demonstrate that it is based on "more than

3   hope." Harbury, 536 U.S. at 416.

4          A claim "is frivolous where it lacks an arguable basis in law or fact." Neitzke v.

5   Williams, 490 U.S. 319, 325 (1989)); see also Silva, 658 F.3d at 1103 ("[P]risoners also have

6   a right, protected by the First Amendment right to petition and the Fourteenth

7   Amendment right to substantive due process, 'to pursue legal redress for claims that have

8   a reasonable basis in law or fact.'").  In other words, a claim can be frivolous because "it

9   is based on an indisputably meritless legal theory" or because its "factual contentions are

10  clearly baseless." Nietzke, 490 U.S. at 327.  However, "not all unsuccessful claims are

11  frivolous." Id. at 329 (citing, e.g., Penson v. Ohio, 488 U.S. 75, (1988) (a criminal defendant

12  has a right to appellate counsel even if his claims are ultimately unavailing, so long as they

13  are not frivolous).)  To prove an arguable claim, "[a] prisoner need not show, ex post, that

14  he would have been successful on the merits had his claim been considered." Allen, 48

15  F.3d at 1091.  To require anything more than this "would permit prison officials to

16  substitute their judgment for the courts' and to interfere with a prisoner's right to court

17  access on the chance that the prisoner's claim would eventually be deemed frivolous."

18  Id. at 1085.

19         That the required showing for an arguable claim is much lower than that of a

20  meritorious claim was central to the reasoning of Sprinkle v. Robinson ("Sprinkle II"), No.

21  2:02-cv-1563-JAM-EFB P, 2017 WL 1079833 (E.D. Cal. Mar. 22, 2017), report and

22  recommendation adopted, 2017 WL 2812973 (E.D. Cal. June 29, 2017), which the District

23  Court in this case relied on for its determination that Plaintiff's claim was not completely

24  barred by Heck v. Humphrey, 512 U.S. 477 (1994).  (See ECF No. 16 at 5-8 (discussing

25  Sprinkle II)); Sprinkle II, WL 1079833 at *5 ("In articulating the 'actual injury' component

26  of an access-to-courts claim, the U.S. Supreme Court in Lewis did not require the plaintiff

27  establish that the underlying case was meritorious; i.e., that he was injured because he

28  was prevented from litigating a winning case.  Instead the Court stated that the plaintiff

must demonstrate only that the deprivation of access 'hindered his efforts to pursue a legal claim' or that 'a nonfrivolous legal claim [has] been frustrated or [is] being impeded.'").  Considering the District Court's ruling that "Plaintiff Arellano may proceed on his access-to-court claim to the extent that he seeks damages other than damages for wrongful incarceration," (ECF No. 16 at 8), this Court proceeds carefully to ensure that its assessment of whether Plaintiff's claims are arguable does not cross into a merits determination that would invade the provenance of habeas corpus and implicate <u>Heck</u>.

Indeed, an earlier order in <u>Sprinkle v. Robinson ("Sprinkle I")</u>, 2007 WL 2389984, demonstrates just how easily the nonfrivolous threshold can be met.  The plaintiff in the <u>Sprinkle</u> cases brought an access to courts claim against the senior law librarian and his supervisor for refusing to copy the exhibits he intended to submit with California habeas petition because the law librarian determined the exhibits were not necessary.  <u>Id.</u> at *3. The <u>Sprinkle</u> plaintiff, like Plaintiff here, sought review of a lengthy sentence based on charges involving sexual offenses against girls under the age of 14 after a trial that had hinged on credibility issues.  <u>Id.</u>  After the law librarian refused to make copies, the plaintiff submitted his petition without exhibits to the superior court, which proceeded to deny at least three issues for lack of supporting documentation.  <u>Id.</u>  Plaintiff sought review of the denial in the appellate court, explaining that the prison refused to make copies of his exhibits, and asking the court to order the prison to make such copies, but the appellate court denied the habeas petition for failure to attach the same missing exhibits.  <u>Id.</u>  On motion for summary judgment, the court rejected the defendants' arguments that "the documents would not have changed the outcome of his petition," stating that a petition for writ of habeas corpus, "which is precisely the sort of litigation addressed in <u>Lewis</u>," is "not facially frivolous."  <u>Id.</u>

Because Defendant's arguments contest the merits of Plaintiff's underlying claims, they miss the mark.  (<u>See</u> ECF No. 134 at 32-33 (Plaintiff cannot prove prejudice and prevail on his IAC claims because "there is no reasonable probability that the results of the trial would have been different regardless of counsel's performance."), 26-32 (arguing

16cv2412-CAB (MSB)

that to the extent Plaintiff seeks to bring actual innocence claims, such claims would be fruitless because all the evidence identified by Plaintiff was, by Plaintiff's own description, known or knowable at the time of trial and it does not clearly establish innocence).) Defendant does not argue that habeas petitioners may not bring IAC and actual innocence claims through collateral attack.  See Neitzke, 490 U.S. at 327-28 (describing what it means for a claim to lack foundation in law).  Similarly, Defendant does not argue that the facts alleged by Plaintiff in support of his underlying claims are "fantastical or delusional." See id., 490 U.S. at 327-28 (describing what it means for factual contentions to be baseless).  Instead, Defendant claims that Plaintiff's alleged facts do not adequately support his contentions.  The merits determination that Defendant now asks this Court to make is the very determination that Plaintiff was entitled to pursue on habeas corpus.

This Court may not assess the merits of the claim to determine whether Plaintiff has suffered an injury, because the injury is the loss of the opportunity to present the claims as intended for a decision on the merits.  Therefore, it is **RECOMMENDED** that the Court conclude Plaintiff's claims are not frivolous and **DENY** Defendant's Motion for Summary Judgment.

## VI.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court **ORDERS** as follows:

A.      Plaintiff's Motion for a copy of ECF No. 153 is **GRANTED** and the Clerk is **ORDERED** to send Plaintiff a copy of ECF No. 153 with this Report and Recommendation; and

B.      Defendant's Request for Judicial Notice in Support of Defendant's Motion for Summary Judgment [ECF NO. 134-3] is **GRANTED**.

As detailed in this above in this Report and Recommendation, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **DENIED**.

**IT IS ORDERED** that no later than **July 20, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

16cv2412-CAB (MSB)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 3, 2020**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  July 2, 2020

Honorable Michael S. Berg
United States Magistrate Judge

16cv2412-CAB (MSB)