UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RAUL ARELLANO,

                                        Plaintiff,

v.

BLAHNIK,

                                        Defendant.

Case No.:  16cv2412-CAB-MSB

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT RE: PUNITIVE DAMAGES [Doc. No. 169]**

On October 29, 2020, Defendant Blahnik filed a motion for summary judgment re punitive damages.  [Doc. No. 169.]  On February 9, 2021, Plaintiff Arellano filed an opposition to the motion.  [Doc. No. 177.]  On February 19, 2021, Defendant filed a reply. [Doc. No. 178.]  For the reasons set forth below, the motion is **GRANTED**.

ALLEGATIONS IN COMPLAINT

In his unverified Complaint[1], Plaintiff alleges that once a week from August 2014, to September 22, 2014, he tried to go to the law library to ask the Librarian, Mr. Blahnik, to make copies of transcripts that the superior court was asking for, but Mr. Blahnik kept

---

[1] In his opposition, Plaintiff states: "I declare under penalty of perjury that everything stated on Complaint, pleadings and motions are all true and correct as to my own personal knowledge."  [Doc. No. 177 at 7.]  Therefore, the Court will assume for purposes of this motion that the Complaint is verified.

1    allowing other inmates who arrived in line after Plaintiff to go first, or Mr. Blahnik told

2    Plaintiff the copier was broken, even though Plaintiff saw Mr. Blahnik making copies for

3    others. (Pl.'s Compl. p. 8:17-251 [Doc. No. 1].) Eventually, Plaintiff told Mr. Blahnik

4    that he needed copies so that he could get sixty grounds for reversal reviewed, exhaust his

5    state remedies, and finally get his conviction overturned, to which Mr. Blahnik replied

6    that he would not help Plaintiff with anything because Plaintiff made him feel pressured

7    by always insisting on trying to go to the library, and because he did not like the criminal

8    charges for which Plaintiff was convicted. (*Id*. at 8:25-9:2, 13:11-16.)

9         On September 22, 2014, Mr. Blahnik accepted from Plaintiff for copying

10   approximately 500 pages of documents, including transcripts and original evidence such

11   as affidavits. (*Id*. at 9:3-7.) Two or three days later, Plaintiff asked Mr. Blahnik what had

12   happened to his original papers, and Mr. Blahnik told Plaintiff that he had lost them when

13   he put them in for copying; then a few days later, when Plaintiff said he had filed a

14   request form (a Form 22), Mr. Blahnik said he had made the copies and had given them

15   to an inmate named Junior. (*Id*. at 9:8- 11.) Plaintiff alleges that he spoke with Junior,

16   who claimed to know nothing about the papers. (*Id.* at 9:12-16.) When Plaintiff

17   confronted Mr. Blahnik, Mr. Blahnik admitted that Junior never got Plaintiff's papers, but

18   that he, himself, intentionally threw the papers away because he did not like Plaintiff or

19   the charges Plaintiff was in for, and he did not want to see people with Plaintiff's type of

20   criminal charges get out. (*Id*. at 9:17-23, 13:10-16.)

21                        MATERIAL FACTS SUBMITTED BY DEFENDANT

22        In September 2014, Librarian Blahnik saw Plaintiff bring a large stack of papers to

23   the prison's law library to be copied. (Blahnik Decl. ¶ 2.) Mr. Blahnik oversaw an inmate

24   worker take the pages from Plaintiff, and as per policy for large copy jobs at that time,

25   tell Plaintiff to wait outside for the copies. (*Id*.) There was an area close to the library

26   door where inmates could wait for their copies. (*Id*.) At that time, taking in copy jobs was

27   normally done by an inmate worker. (*Id*. at ¶ 3.) As he was required to do, Mr. Blahnik

28   personally skimmed through Plaintiff's copies to ensure that they consisted of allowed

legal work. (*Id*. at ¶ 4.) Then Mr. Blahnik personally supervised the inmate worker who made the copies of the documents that Plaintiff had brought in. (*Id*.)

When the copies were complete, Mr. Blahnik handed a box containing the originals and the copies to an inmate worker, and directed that worker to provide the box to Plaintiff, who should have been waiting close by. (*Id*. at ¶ 5.) Mr. Blahnik saw this inmate worker exit the law library carrying the box of originals and copies for Plaintiff, but because Mr. Blahnik had to continue monitoring the other inmate workers and inmate-library users who were inside the library, Mr. Blahnik did not monitor this inmate worker to ensure that he physically handed the box of copies to Plaintiff. (*Id*.) At this time, Mr. Blahnik did not usually follow inmate workers outside to ensure that copies were given to inmates because Mr. Blahnik had to oversee the other inmate workers and inmate library users who were inside the library, and Mr. Blahnik was not aware of any issues with inmates not receiving their copies in such situations. (*Id*. at ¶ 6.)

The next day when Plaintiff complained that he did not receive his copies, Mr. Blahnik went to Plaintiff's cell where he saw thousands of pages of documents. (*Id*. at ¶ 7.) When Mr. Blahnik asked Plaintiff about the thousands of pages, Plaintiff claimed that those were not the same papers. (*Id*.) Mr. Blahnik has no knowledge regarding what happened to the allegedly lost originals and copies after he handed the box of them to the inmate worker to give to Plaintiff. (*Id*. at ¶ 8.)

In 2014, Mr. Blahnik was not aware of Plaintiff's conviction offenses. (*Id*. at ¶ 9.)

On or after September 24, 2014, but before October 11, 2014, Plaintiff filed an Inmate Request Form 22, wherein he stated that he learned that the papers he submitted for copying on September 24, 2014 "all got lost," making no accusations of wrongdoing besides simple loss of papers. (Pl.'s Form 22, attached as Ex. 1; Pl.'s Dep. pp. 78:15-79:24, attached as Ex. 2; Snyder Decl. ¶ 2.) In a notation dated December 23, 2014, on that same form wherein Plaintiff requested supervisory review, Plaintiff wrote that he "believe[d] the original paper got lost somewhere [i]n the mail," making no accusations

of wrongdoing besides simple loss in the mail. (Pl.'s Form 22, attached as Ex. 1; Pl.'s Dep. pp. 78:15- 79:24, attached as Ex. 2; Snyder Decl. ¶ 2.)

Plaintiff submitted a prison grievance on a Form 602-A dated October 22, 2014, log no. RJD-B-14-4029, wherein he blamed Mr. Blahnik for losing his paperwork, but making no accusations of wrongdoing besides simple loss of papers. (Pl.'s Form 602-A, log. no. RJD-B-14-4029, dated 10/22/2014, attached as Ex. 3; Pl.'s Dep. pp. 82:9-85:11, attached as Ex. 2; Snyder Decl. ¶¶ 2- 3.) On November 22, 2014, grievance log no. RJD-B-14-4029 was rejected, and Plaintiff wrote notes at the bottom of the rejection letters stating that Mr. Blahnik had lost his paperwork, making no accusations of wrongdoing beyond simple loss of papers. (Four screening letters, dated 11/22/2014, attached as Ex. 4; Pl.'s Dep. pp. 82:9-85:11, attached as Ex. 2; Snyder Decl. ¶¶ 2, 4.)

On a grievance Plaintiff titled "Rewrite RJD-B-14-4029," dated December 3, 2014, Plaintiff wrote that he wanted to be moved to B-yard because Mr. Blahnik lost his paperwork and that the inmate library workers "don't like me, which am risking (sic) for them to loose (sic) my paperwork again," making no accusations of wrongdoing beyond simple loss of papers by Blahnik, and implying that the inmate workers were the ones who lost his papers because they did not like him. (Rewrite Form 602, log. no. RJD-B-14-4029, dated 12/3/2014, attached as Ex. 5; Pl.'s Dep. pp. 82:9-85:11, attached as Ex. 2; Snyder Decl. ¶¶ 2, 5.)

On December 24, 2014, the December 3, 2014 grievance was rejected, and Plaintiff wrote a note at the bottom of the rejection letter stating that Mr. Blahnik had lost his paperwork, making no accusations of wrongdoing beyond simple loss of papers. (Two screening letters, dated 12/24/2014, attached as Ex. 6; Pl.'s Dep. pp. 82:9-85:11, attached as Ex. 2; Snyder Decl. ¶¶ 2, 6.)

## DISCUSSION

A. Legal Standard.

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), quoting Fed. R. Civ. P. 56(c). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the court must determine "whether a fair-minded jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

B. Analysis.

Punitive damages under 42 U.S.C. §1983 are allowed only where a defendant's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461

U.S. 30, 56 (1986).  Here, the only evidence Plaintiff presents of evil motive or intent or reckless or callous indifference are two statements Plaintiff alleges were made by Mr. Blahnik:

1. On or before September 22, 2014, Mr. Blahnik allegedly stated the reason he would not help Plaintiff make copies is because "he don't like my type of charges is the reason why he won't help me on Anything I need." [Doc. No. 1 at 9, ll. 1-2.]

2. On or about October 22, 2014, after filing a grievance, Plaintiff saw Mr. Blahnik and accused him of lying, to which Mr. Blahnik responded:  "I should of never filed any grievance against him. And that Jr. never got my papers, he was the one who intentionally threw them away because he don't like me or the charges I was charge for."  [Doc. No. 1 at 9, ll. 20-23.]

All of these statements were allegedly made between September and October 2014.  Yet, starting in September 2014 and continuing through December, 2014, Plaintiff submitted at least six inmate request forms, grievances, or letters alleging that the papers he submitted for copying were lost by Mr. Blahnik, were lost in the mail, or perhaps were lost by the inmate workers, but he never made any accusations of evil intent or motive or recklessness or callous indifference by Mr. Blahnik.[2]  This is something every inmate would have included had it occurred, especially one with as much litigation experience as Plaintiff.[3]

While generally at the summary judgment stage facts must be viewed in the light most favorable to the nonmoving party, when a party's story is so blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott v.*

_____

[2] In his opposition, Plaintiff attempts to refute Defendant Blahnik's statements by referencing allegations in the Complaint and arguing that such allegations support punitive damages.  [Doc. No. 177 at 1-4.]  However, Plaintiff never addresses the fact that he failed to include the alleged statements made by Mr. Blahnik in the grievances, forms or letters submitted through December 2014.

[3] Plaintiff admitted in his deposition that he has filed approximately 14 lawsuits against prison officials at his facility.  [*See* Doc. No. 169-2 at 12:ll. 12-21.]

*Harris*, 550 U.S. 372, 380 (2007).  Here, no reasonable jury would believe that Plaintiff, no stranger to filing grievances, would somehow omit the most damaging evidence of evil motive or intent from those grievances.  Without those alleged statements by Blahnik, Plaintiff has presented no other evidence of evil motive or intent or reckless or callous indifference.  Therefore, summary judgment as to punitive damages is warranted.

CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment as to punitive damages is **GRANTED**, and Plaintiff's request for punitive damages is stricken.

**IT IS FURTHER ORDERED** that, prior to any other proceedings going forward, the parties shall participate in a mandatory settlement conference ("MSC") before Magistrate Judge Berg.  Defendant's counsel shall contact the chambers of Magistrate Judge Berg within **one week** of this order to schedule the MSC and arrange for Plaintiff's participation in the MSC.

**IT IS SO ORDERED.**

Dated:  March 30, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge

16cv2412-CAB-MSB